## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:12-MD-02324-LENARD

IN RE: HORIZON ORGANIC MILK
PLUS DHA OMEGA-3 MARKETING
AND SALES PRACTICE LITIGATION
_____/

### FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs by and through their attorneys, bring this action on behalf of themselves and all others similarly situated, against Defendants Dean Foods Company and WhiteWave Foods Company and state:

### NATURE OF ACTION

1.     Defendants manufacture, distribute, market and sell nationwide five milk products fortified with highly processed fermented algae known as "DHA" under their brand names "Horizon Organic" and "Silk."[1] Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendants claim that consuming their premium priced DHA-fortified milk will support brain health in children and adults of all ages.  Front and center and prominently featured by itself in a banner running across the front of each and every milk carton, Defendants state "DHA Omega-3 Supports Brain Health."  The brain health representation also prominently appears on the top, the back and the left side panel of every milk carton.

2.     In truth, the DHA-fortified milk products do not support brain health in children or adults.  Defendants also do not have competent and reliable scientific evidence to support their brain health representation. Clinical cause and effect studies have found no causative link between DHA algal oil supplementation and brain health.  Defendants' brain health representation is false, misleading, and reasonably likely to deceive the public.

3.     Defendants have employed numerous methods to convey their uniform, deceptive

_____

[1] These products include: (1) Horizon Organic Whole Milk plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Milk plus DHA Omega-3; and (5) Silk DHA Omega-3 & Calcium All Natural Soy Milk (collectively, "DHA-fortified milk" or "the products").

brain health representation to consumers, including print, radio and television advertisements, the Internet, social media websites and, importantly, on the front of the products' packaging and labeling where it cannot be missed by consumers.  The only reason a consumer would purchase the premium-priced DHA-fortified milk products is to obtain the advertised health benefit, which the products do not provide.

4.      As a result of Defendants' deceptive brain health representation, consumers – including Plaintiffs and members of the proposed Class – have purchased a product that does not perform as advertised.   Moreover, Plaintiffs have paid a significant price premium for Defendants' DHA-fortified milk products over other comparable products, including Defendants' other organic and soy milk products that do not make the deceptive brain health representation.   For example, on average, a 1/2 gallon of Horizon Organic Milk plus DHA Omega-3 retails between .20 and .50 cents more than Defendants' Horizon Organic Milk without the DHA additive.  Similarly, a 1/2 gallon of Silk DHA Omega-3 retails between .20 and .70 cents more than Silk Soy Milk without the DHA Additive.

5.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the DHA-fortified milk products.  Based on violations of state unfair competition laws (described below), breaches of express warranties, and unjust enrichment, Plaintiffs seek injunctive and monetary relief for consumers who purchased the DHA-fortified milk products.

**JURISDICTION AND VENUE**

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from Defendants.

7.     This Court has personal jurisdiction over Defendants because Defendants are authorized to do business and are conducting business throughout the United States, including Florida.  Defendants have marketed, promoted, distributed, and sold the DHA-fortified milk products in the United States, including Florida, and have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

8.     Venue is proper in this Court pursuant to the February 9, 2012 Transfer Order by the United States Judicial Panel on Multidistrict Litigation (D.E. 31), and pursuant to 28 U.S.C. § 1391.  Further, many of the acts and transactions giving rise to this action occurred in this District and Defendants are authorized to conduct business in this District, have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of the DHA-fortified milk products in this District and are subject to personal jurisdiction in this District.

9.     Plaintiffs in each of the actions transferred pursuant to the February 9, 2012 Transfer Order reserve their right to remand to the districts from which they were transferred at or before the conclusion of the pre-trial proceedings.  *See Lexecon, Inc. v Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

## PARTIES

10.     Plaintiff Colleen Auer ("Plaintiff Auer") is a citizen of Maricopa County, Arizona.  For approximately six months in 2011, Plaintiff Auer purchased several 1/2 gallon cartons of Horizon Organic Fat-Free Milk plus DHA Omega-3 from a Fry's in Fountain Hills, Arizona.  Prior to purchasing the product, Plaintiff Auer was exposed to and saw Defendants' brain health representation by reading the Horizon Organic Fat-Free Milk plus DHA Omega-3 label.  Relying on the brain health representation, Plaintiff Auer purchased Horizon Organic Fat-Free Milk plus DHA Omega-3, to the exclusion of other milk products, believing the product supported brain health.  She paid approximately $5.00 for each 1/2 gallon carton.  The Horizon Organic Fat-Free Milk plus DHA Omega-3 Plaintiff Auer purchased did not support brain health

as represented.  As a result, Plaintiff Auer suffered injury in fact and lost money. Had Plaintiff Auer known the truth about Defendants' misrepresentations and omissions, including that Defendants did not possess competent scientific evidence to support the brain health representation, she would not have purchased and consumed Horizon Organic Fat-Free Milk plus DHA Omega-3.

11.     Plaintiff Evereth Barrera ("Plaintiff Barrera") is a citizen of Imperial County, California.   Between approximately July and August 2011, Plaintiff Barrera purchased approximately three 1/2 gallon cartons of Horizon Organic Reduced Fat Milk plus DHA Omega-3 from Von's in El Centro, California.  Prior to purchasing the product, Plaintiff Barrera was exposed to and saw Defendants' brain health representation by reading the Horizon Organic Reduced Fat Milk plus DHA Omega-3 label.   Relying on the brain health representation, Plaintiff Barrera purchased Horizon Organic Reduced Fat Milk plus DHA Omega-3, to the exclusion of other milk products, believing the product supported brain health.  He paid between $4.75 and $6.00 for each 1/2 gallon carton.  The Horizon Organic Reduced Fat Milk plus DHA Omega-3 Plaintiff Barrera purchased does not support brain health as represented.  As a result, Plaintiff Barrera suffered injury in fact and lost money.  Had Plaintiff Barrera known the truth about Defendants' misrepresentations and omissions, including that the Defendants did not possess competent scientific evidence to support the brain health representation, he would not have purchased and consumed Horizon Organic Reduced Fat Milk plus DHA Omega-3.

12.     Plaintiff Dr. Brie Gindele ("Plaintiff Gindele") is a citizen of Lee County, Florida. From 2007 through June 2008, Plaintiff Gindele purchased approximately twenty 1/2 gallon cartons of Horizon Organic Reduced Fat Milk plus DHA Omega-3 from Kroger supermarket in Marietta Georgia, and from approximately July 2009 through 2010, she purchased approximately thirty 1/2 gallon cartons of Horizon Organic Reduced Fat Milk plus DHA Omega-3 from Publix supermarkets in Fort Meyers, Florida.  Prior to purchasing the product, Plaintiff Gindele was exposed to Defendants' print and Internet advisements claiming that the products support brain health in adults and children.   Plaintiff Gindele also visited Defendants' website, which

described the scientific evidence supporting the brain health representation.  Based on this information, Plaintiff Gindele went to the store and prior to purchasing the products, read the Horizon Organic Reduced Fat Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3 labels, which reaffirmed the claims she saw on the television and Internet advertisements and Defendants' website.  Relying on these claims, Plaintiff Gindele purchased the products to the exclusion of other milk products, believing the products supported brain health.  She paid between approximately $3.89 and $4.39 for each 1/2 gallon carton.  The Horizon Organic Reduced Fat Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3 that Plaintiff purchased does not support brain health as represented.  As a result, Plaintiff Gindele suffered injury in fact and lost money.  Had Plaintiff Gindele known the truth about Defendants' misrepresentations and omissions, including that the Defendants did not possess competent scientific evidence to support the brain health representation, she would not have purchased and consumed Horizon Organic Reduced Fat Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3.

13.    Plaintiff Steven Hulsey ("Plaintiff Hulsey") is a citizen of Washington County, Arkansas.  Beginning in approximately April 2011, Plaintiff Hulsey began purchasing 1/2 gallon cartons of Horizon Organic 2% Milk plus DHA Omega-3 and Horizon Organic Fat-Free plus DHA Omega-3 from Wal-Mart Supercenters and Neighborhood Market in Fayetteville, Arkansas.  Prior to purchasing the products, Plaintiff Hulsey was exposed to and saw Defendants' brain health representation by reading Defendants' website that claimed the products support brain health and that science existed to support the claim.  After being exposed to the website, Plaintiff went to the store and read the Horizon Organic 2% Milk plus DHA Omega-3 and Horizon Organic Fat-Free plus DHA Omega-3 labels, which reaffirmed the brain health representation.  Relying on these claims, Plaintiff Hulsey purchased Horizon Organic 2% Milk plus DHA Omega-3 and Horizon Organic Fat-Free plus DHA Omega-3, to the exclusion of other milk products, believing the products supported brain health.  The Horizon Organic 2% Milk plus DHA Omega-3 and Horizon Organic Fat-Free plus DHA Omega-3 products Plaintiff

Hulsey purchased did not support brain health as represented.  As a result, Plaintiff Hulsey suffered injury in fact and lost money. Had Plaintiff Hulsey known the truth about Defendants' misrepresentations and omissions, including that the Defendants did not possess competent scientific evidence to support the brain health representation, he would not have purchased and consumed Horizon Organic 2% Milk plus DHA Omega-3 or Horizon Organic Fat-Free plus DHA Omega-3.

14.     Plaintiff Michelle Schucher ("Plaintiff Schucher") is a citizen of Miami-Dade County, Florida.  Beginning in 2010, Plaintiff Schucher purchased multiple 1/2 gallon cartons of Silk DHA Omega-3 & Calcium Milk at Publix and Whole Foods markets in Miami-Dade County.   Prior to purchasing this product, Plaintiff Schucher was exposed to and saw Defendants' brain health representation by reading the Silk DHA Omega-3 Milk label.  Relying on the brain health representation, Plaintiff Schucher purchased Silk DHA Omega-3 Milk, believing the product supported brain health.  The Silk DHA Omega-3 Milk Plaintiff purchased does not support brain health as represented.  As a result, Plaintiff Schucher suffered injury in fact and lost money.   Had Plaintiff Schucher known the truth about Defendants' misrepresentations and omissions, including that the Defendants did not possess competent scientific evidence to support the brain health representation, she would not have purchased and consumed Silk DHA Omega-3 Milk.

15.     Plaintiff Veronica Sisneros is a citizen of Maricopa County, Arizona. For approximately the last two months, Plaintiff Sisneros purchased several 1/2 gallon cartons of Horizon Organic Whole Milk plus DHA Omega-3 from a Wal-Mart in Phoenix, Arizona.  Prior to purchasing the product, Plaintiff Sisneros was exposed to and saw Defendants' brain health representation by reading the Horizon Organic Whole Milk plus DHA Omega-3 label.  Relying on the brain health representation, Plaintiff Sisneros purchased Horizon Organic Whole Milk plus DHA Omega-3, to the exclusion of other milk products, believing the product supported brain health.  She paid approximately $5.00 for each 1/2 gallon carton.  The Horizon Organic Whole Milk plus DHA Omega-3 Plaintiff Sisneros purchased did not support brain health as

represented.  As a result, Plaintiff Sisneros suffered injury in fact and lost money. Had Plaintiff Sisneros known the truth about Defendants' misrepresentations and omissions, including that Defendants did not possess competent scientific evidence to support the brain health representation, she would not have purchased and consumed Horizon Organic Whole Milk plus DHA Omega-3.

16.     Plaintiff Jaime Walker ("Plaintiff Walker") is a citizen of Cook County, Illinois. During 2011, Plaintiff Walker purchased several 1/2 gallon cartons of Horizon Organic Fat-Free Milk plus DHA Omega-3 from Brookhaven and Target in Mokena, Illinois.  Prior to purchasing the product, Plaintiff Walker was exposed to and saw Defendants' brain health representation by reading the Horizon Organic Fat-Free Milk plus DHA Omega-3 label.  Relying on the brain health representation, Plaintiff Walker purchased Horizon Organic Fat-Free Milk plus DHA Omega-3, to the exclusion of other milk products, believing the product supported brain health. The Horizon Organic Fat-Free Milk plus DHA Omega-3 Plaintiff Walker purchased does not support brain health as represented.  As a result, Plaintiff Walker suffered injury in fact and lost money.  Had Plaintiff Walker known the truth about Defendants' misrepresentations and omissions, including that the Defendants did not possess competent scientific evidence to support the brain health representation, she would not have purchased and consumed Horizon Organic Fat-Free Milk plus DHA Omega-3.

17.     Plaintiff Wendy Wilson ("Plaintiff Wilson") is a citizen of Hillsborough County, Florida.  Plaintiff Wilson purchased approximately one hundred 1/2 gallon cartons of Horizon Organic Whole Milk plus DHA Omega-3 from approximately 2007 to 2008, and approximately one hundred 1/2 gallon cartons of Horizon Organic Reduced Fat Milk plus DHA Omega-3 from approximately 2009 to 2010, from Publix, Target and Wal-Mart supermarkets in Tampa Bay, Florida.  Prior to purchasing the products, Plaintiff Wilson saw Defendants' print and television advertisements claiming that the products support brain health in adults and children.  Prior to purchasing the products, Plaintiff Wilson also read the Horizon Organic Whole Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3 labels reaffirming the

claims she saw on the television and print advertisements. Relying on these claims, Plaintiff Wilson purchased Horizon Organic Whole Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3 to the exclusion of other milk products, believing the products supported brain health. She paid approximately $4.39 for each 1/2 gallon carton. The Horizon Organic Whole Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3 Plaintiff purchased do not support brain health as represented. As a result, Plaintiff Wilson suffered injury in fact and lost money. Had Plaintiff Wilson known the truth about Defendants' misrepresentations and omissions, including that the Defendants did not possess competent scientific evidence to support the brain health representation, she would not have purchased and consumed Horizon Organic Whole Milk plus DHA Omega-3 and Horizon Organic Reduced Fat Milk plus DHA Omega-3.

18.     Defendant Dean Foods Company ("Dean Foods") is a corporation organized and existing under the laws of the state of Delaware. Dean Foods' headquarters is at 2711 North Haskell Avenue, Suite 3400, Dallas, Texas 75204. Dean Foods owns the "Silk" and "Horizon Organic" brands.

19.     Defendant WhiteWave Foods Company ("WhiteWave Foods"), a wholly-owned subsidiary of Defendant Dean Foods, is organized and existing under the laws of the state of Delaware. Defendant WhiteWave Foods' headquarters is at 12002 Airport Way, Broomfield, Colorado 80021. WhiteWave Foods distributes the DHA-fortified milk products throughout the United States from its five regional distribution centers located in California, Florida, New Jersey, Utah and Virginia.

20.     Dean Foods and WhiteWave Foods (collectively "Defendants") manufactured, advertised, marketed, distributed, and sold the DHA-fortified milk to tens of thousands of consumers nationwide. Defendants also distributed the false, misleading and deceptively labeled DHA-fortified milk to consumers throughout the United States from their regional distribution centers.

21.     Plaintiffs are informed and believe and thus allege, that at all times herein

mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

## FACTUAL ALLEGATIONS

### *The DHA-fortified Products*

22.     Defendants manufacture, distribute, market and sell nationwide a variety of branded dairy, soy and plant-based beverages.  This lawsuit concerns five of those products: (1) Horizon Organic Whole Milk plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Milk plus DHA Omega-3; and (5) Silk DHA Omega-3 & Calcium All Natural Soy Milk.

23.     Defendants' DHA-fortified milk products are sold in virtually every major food, drug, and mass retail outlet in the country.  One-half gallon of the Horizon Organic Milk plus DHA Omega-3 retails for approximately $5.00 to $6.00.  One-half gallon of Silk DHA Omega-3 Milk retails for approximately $4.00-5.00.  The following are screen shots of the products:

    

24.     Since the products' launch in 2007, Defendants have consistently conveyed the message to consumers throughout the United States that their DHA-fortified milk products

"support[] brain health" in children and adults.   They do not.   Defendants' brain health representation is false, misleading and deceptive.

25.     All the products Defendants manufacture, market, and sell contain algal DHA. One common type of DHA is a long-chain omega-3 fatty acid typically found in cold water fish. However, the DHA in Defendants' milk products is not derived from fish oil.  Instead, the DHA oil found in Defendants' milk is an immature short-chain Omega-3 fatty acid made from an extract of mutated and fermented algae.  Contrary to Defendants' representations made on each and every milk carton, DHA algal oil does not support brain health.

*Defendants' Deceptive Advertising and Marketing of DHA-fortified milk*

26.     In 2007, Defendants began selling the DHA-fortified milk products.  Also in 2007, Defendants launched a major advertising campaign to promote the products, conveying a substantially similar message about the health benefits DHA-fortified milk provides.

27.     For example, each and every product package and label repeatedly emphasizes that DHA-fortified milk supports brain health.  Every consumer who purchases the products is exposed to this deceptive brain health representation, which appears prominently and conspicuously on the front and in the center of each carton as follows:

 

28.   The entire backside of the cartons is similarly dedicated to promoting the DHA algal oil in Defendants' products and its purported ability to support brain health:

 

29.   The brain health representation also appears on the top of the Horizon Organic Milk plus DHA Omega-3 cartons:



30.   It appears again on the left-side panel of the Horizon Organic Milk plus DHA Omega-3 cartons, with the added representation that "DHA may make a big difference for kids

and adults alike:"



31.    Defendants' websites, http://silksoymilk.com/products/silk-wellness/dha-omega-3-and-calcium and www.horizondairy.com, which are available to the general public, also contain substantially similar deceptive messages about the ability of the Products to support brain health.  The following screen shots are illustrative:





32.    Defendants' horizon dairy website also attributes the alleged brain health benefit

to the inclusion of the DHA Omega-3 additive, which Defendants tout as "a valuable nutrient

that supports the brain" and a "choice for every member of the family:"



33.    Similarly,  print  advertisements  claim  that  Horizon  Organic  Milk  plus  DHA
Omega-3 supports "healthy brain development:"



34.    Through their labeling and advertising statements concerning the DHA-fortified
milk products – including those referenced above – Defendants have uniformly conveyed one
message:  the DHA-fortified milk products "support[] brain health" in children and adults.  They
do not.

- 14 -

### Defendants' Brain Health Representation Is Not Supported By Scientific Evidence

35.     There are no competent and reliable scientific studies that DHA algal oil supplementation supports brain health.  The one and only "reference" identified on the Horizon Organic Milk plus DHA Omega-3 package, Kris-Etherton, PM, et al., Am. J. Clin. Nutr. 2000;71(suppl):179S-88S, is a review on the consumption practices and sources of Omega-3 fatty acids in U.S. diets.  The review did not address – let alone support – the claim that DHA algal oil supplementation supports brain health.

36.     In an attempt to bolster their deceptive message, Defendants identify on their websites five other clinical publications that purportedly substantiate the brain health claim, but fail to do so.[2]

37.     The first citation is to a policy statement from the International Society for the Study of Fatty Acids and Lipids ("ISSFAL") concerning the dietary fat intake of pregnant and lactating women.  *See* ISSFAL Policy Statement 4: Recommendations for intake of polyunsaturated fatty acids by pregnant and lactating women (2009).[3]  Not only did the ISSFAL study look at pregnant and lactating women, not the general population to which Defendants market the products, it also analyzed the importance of fish intake and did not mention plant-based DHA or supplementation.  *Id.* at 1.  To that end, the group recommended that pregnant and lactating women "should aim to achieve dietary intake of n-3 LC-PUFA that supplies a DHA intake of at least 200 mg/day." *Id.* at 3.  That recommendation would require pregnant and lactating women to drink almost an entire carton of milk fortified with fish oil-based DHA every day.

---

[2] Four of the publications are available on the Horizon Organic Milk plus DHA Omega-3 website, from a "facts about DHA" pdf, http://www.horizondairy.com/wpcontent/themes/horizon /pdf/HorizonOrganic_ DHA_FactSheet.pdf (last visited Feb. 16, 2011).  The final publication is listed on the Silk DHA Omega-3 website.
[3] The ISSFAL Policy Statement was originally published as Koletzko B., et al., *Dietary Fat Intakes For Pregnant And Lactating Women,* 98 British J. of Nutrition, 1-5 (2007) ("the Koletzko study").

38.     The second citation, Jensen C.L., et al., *Effects of early maternal docosahexaenoic acid intake on neuropsychological status and visual acuity at five years of age of breast-fed term infants*, 157(6) J. Pediatr. 900-05 (2010) (the "Jensen Study") also fails to support the brain health representation.  The Jensen study did not examine whether DHA enriched milk supports brain health in children or adults, but instead addressed whether there were observational effects "on neurodevelopmental status and visual function in the recipient infant" who received supplementation during breastfeeding.  *Id.* at 125.  On the issue of cognitive development in infants, the study is inconclusive,  finding  that while "formula-fed infants may benefit from a formula with a DHA content in excess of 0.2% of total fatty acids," "additional studies are required to determine whether this apparent advantage is real, whether this advantage persists, and whether other delayed effects of early DHA availability emerge."  *Id.*

39.     The third citation, McCann, J.C., & Ames, B.N., *Is Docosahexaenoic Acid, An N_3 Long-Chain Polyunsaturated Fatty Acid, Required For Development Of Normal Brain Function? An Overview Of Evidence From Cognitive And Behavioral Tests In Humans And Animals*, 82 Am. J. Clin. Nutr. 281-95 (2005) ("the McCann study"), looked at a limited number of human and animal studies. The human studies were further limited to pregnant and lactating women and infants, not the target population for the products. The review authors expressly emphasized that the trials most capable of providing definitive, competent and reliable evidence – "have yielded mixed results" and overall, "the evidence is insufficient to conclude that LCPUFA supplementation benefited [cognitive] development."  *Id.*

40.     The fourth citation, Dalton, A., et al., *A randomized control trial in schoolchildren showed improvement in cognitive function after consuming a bread spread, containing fish flour from a marine source*, 80(2-3) Prostaglandins Leukot Essent Fatty Acids 143-49 (2009), did not include analysis on supplementation of products like milk with plant-based DHA.  Instead, subject participants received fish-flour spread or a placebo spread for 6 months.  *Id.*

41.     The final review article, also referenced on the Silk DHA Omega-3 Milk carton, Bourre J.M., *Dietary omega-3 fatty acids for women*, 61(2-3) Biomed Parmacother 105-12 (2007), explains why women need Omega-3s, particularly during pregnancy and while breast feeding.  The study finds that Omega-3s may benefit women by preventing development of certain cancers and diseases, but that the "only good sources [DHA Omega-3s] are fish and seafood, together with 'omega-3' eggs." *Id.*  The article does not address whether Omega-3 supplementation improves cognitive function and does not reference Omega-3s in milk products.

42.     None of these studies constitute competent and reliable scientific evidence that the DHA-fortified milk products are "Proven Effective" for supporting brain health because, *inter alia*, the studies, preclinical or otherwise, involve pregnant and lactating women or infants not the target population, test irrelevant endpoints, are inconclusive and do not analyze DHA Omega-3 in the quantity or medium delivered by the products.

43.     Indeed, clinical cause and effect studies establish that Defendants' brain health representation is deceptive.  For example, in Kirby, A., et. al., *A Double-Blind, Placebo-Controlled Study Investigating the Effects of Omega-3 Supplementation in Children Aged 8-10 Years from a Mainstream School Population*, 31(3) Research in Developmental Disabilities 718-30 (2010),  the study authors examined the effects of DHA supplementation on 450 students, aged 8-10 years old for 16 weeks.  *Id.* at 720.  The study authors found that, despite the wide range of cognitive and behavior outcomes used, DHA supplementation resulted in no significant differences in cognitive results:  "very few significant differences between the supplemented and placebo group on the learning and performance measures used." *Id.* at 729.

44.     Similarly, a 2008 study funded by Martek Biosciences, the manufacturers of the algal DHA in the products, concluded that there was no statistically significant difference between the DHA and placebo group in cognitive function. *See* Ryan, A., et al., *Assessing the Effect of Docosahexaemoic Acid on Cognitive Functions in Healthy Preschool Children*, 47(4)

Clin. Pediatr. 355-62 (2008) (the Ryan Study);[4] *see also* Eilander, A., et al., *Effects of n-3 long chain polyunsaturated fatty acid supplementation on visual and cognitive development throughout childhood: a review of human studies*, 76(4) J. Prostaglandins, Leukotrienes and Essential Fatty Acids 189-203 (Apr. 2007) ("Evidence for benefits of n-3 LCPUFA on cognitive development in healthy children older than 2 years of age is too limited to allow a clear conclusion.").

45.     Based on the lack of confirming scientific evidence, the Federal Trade Commission recently examined Defendants' brain health representations as part of its ongoing monitoring program.  In light of the FTC's investigation, Defendants modified their radio, television, print and online advertisements.  Defendants have not changed the Product labels and packaging, which every purchaser is necessarily exposed to at the point of sale.

46.     Defendants did not and do not have competent and reliable scientific evidence that the DHA algal oil in their milk products supports brain health.  In fact, competent and reliable scientific studies have found no cause and effect relationship between intake of milk supplementation with DHA algal oil and cognitive development.  Defendants' brain health representation is false and misleading and reasonably likely to deceive the average consumer.

### The Impact of Defendants' Wrongful Conduct

47.     Despite inadequate, inapplicable and inconclusive testing, Defendants continue to unequivocally claim that their products "support[] brain health" for children and adults alike.

48.     As the manufacturers and distributors of the DHA-fortified milk products, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in their products and are in a superior position to learn of the effects – and have learned of the effects – their products have on consumers.

49.     Specifically, Defendants knew or should have known, but failed to disclose that they have no competent and reliable scientific evidence that their DHA-fortified milk products

---

[4] This study examined 175 four-year old children who received either 400 mg/d of DHA or a placebo in capsules for 4 months.

support brain health and that well conducted, clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

50.     Nonetheless, Defendants conveyed and continue to convey one uniform message: DHA-fortified milk supports brain health in children and adults of all ages.

51.     Plaintiffs and Class members have been and will continue to be deceived or misled by Defendants' deceptive brain health representation.  Plaintiffs purchased and consumed the products during the relevant time period and in doing so, read and considered the product labels and other advertisements, and based their decision to buy the products on the brain health representation.  Defendants' brain health representation and omissions were a material factor in influencing Plaintiffs' decision to purchase and consume the products.  Plaintiffs would not have purchased the products had they known that Defendants' claims were false and misleading, that Defendants did not possess competent and reliable scientific evidence to support their brain health representation, and that clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

52.     As a result, Plaintiffs and the Class members have been damaged in their purchases of these products and have been deceived into purchasing products that they believed, based on Defendants' representations, supported brain health, when, in fact, they do not.

53.     Based upon the purported brain health benefit conveyed in their marketing and advertising, Defendants are able to price their DHA-fortified milk products at a premium over other milk products, organic or otherwise, without the additive.  In fact,  a 1/2 gallon of Horizon Organic Milk plus DHA Omega-3 retails between .20 and .50 cents more than Defendants' Horizon Organic Milk without the DHA additive, while a 1/2 gallon of Silk DHA Omega-3 retails between .20 and .70 cents more than Silk Soy Milk without the DHA additive.

### CLASS DEFINITION AND ALLEGATIONS

54.     As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek to represent subclasses of consumers from their

home states and states with similar laws who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

55.     Excluded from each of the above subclasses are Defendants and their officers, directors and employees and those who purchased the DHA-fortified milk products for resale.

56.     ***Numerosity***.  The subclasses comprise tens of thousands of consumers throughout the United States, including Arizona, California, Florida, Illinois and Arkansas.  The subclasses are so numerous that joinder of all members of the subclasses is impracticable.    The precise number of subclass members is unknown to Plaintiffs.

57.     ***Existence and Predominance of Common Questions of Law and Fact***.  This action involves common questions of law and fact, which predominate over any questions affecting individual subclasses members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b)     whether Defendants had adequate substantiation for their brain health representation prior to disseminating those claims to the consuming public;

(c)     whether consumers paid a premium for the DHA-fortified milk products;

(d)     whether Defendants' alleged conduct violates public policy;

(e)     whether the alleged conduct constitutes violations of the laws asserted;

(f)     whether Defendants engaged in false or misleading advertising;

(g)     whether Defendants have been unjustly enriched at the expense of Plaintiffs and the subclass members as a result of Defendants' false and misleading representations;

(h)     whether Plaintiffs and subclass members have sustained monetary loss and the proper measure of that loss; and

(i)     whether Plaintiffs and subclass members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

58.     *Typicality*.  Plaintiffs' claims are typical of the claims of the members of the subclasses because, *inter alia*, all subclass members were injured through the uniform misconduct described above, were subject to Defendants' deceptive brain health statements, including the deceptive brain health representation that accompanied each and every carton of DHA-fortified milk.   Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the subclasses.

59.     *Adequacy of Representation*.  Plaintiffs will fairly and adequately protect the interests of the members of the subclasses.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the subclasses.

60.     *Superiority*.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed subclass members to prosecute their claims individually.  The trial and the litigation of Plaintiffs' claims are manageable.

61.     Defendants have acted and refused to act on grounds generally applicable to the subclasses by engaging in a uniform marketing and advertising campaign containing false, misleading and deceptive representations and material omissions that misled Plaintiffs and the subclass, thereby making appropriate final injunctive relief with respect to the subclasses as a whole.

**COUNT I**
**For Violations of the Arizona Consumer Fraud Act – Ariz. Rev. Stat. §44-1521 *et seq.*,**
**(on Behalf of Plaintiffs Auer and Sisneros and the Arizona Class)**

62.     Plaintiffs Auer and Sisneros reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

63.     Pursuant to section 44-1522, Ariz. Rev. Stat., it is unlawful to engage in false, misleading or deceptive acts or practices in connection with the sale or advertisement of any

merchandise.  Defendants' DHA-fortified milk products are merchandise within the scope of the Act.

64.     Defendants' false, misleading and deceptive acts or practices were made in connection with the advertisement and sale of merchandise as defined in section 44-1521(5), Ariz. Rev. Stat.

65.     As explained herein, Defendants misrepresented and omitted material facts regarding the DHA-fortified milk products' ability to support brain health in the products' advertising and marketing materials.

66.     As manufacturers, distributors, and retailers of the DHA-fortified milk products, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in the products.  Thus, Defendants are in superior positions to learn of the effects, and have learned of the effects their DHA-fortified milk products have on consumers.  As a result, Defendants knew, or should have known, that their brain health representation was false, misleading and/or deceptive.

67.     Defendants' misrepresentations and material omissions in the advertising, marketing and packaging of their DHA-fortified milk products were intended to, and did, deceive Plaintiffs Auer and Sisneros and Arizona Class members into purchasing the products.

68.     Plaintiffs Auer and Sisneros and the Arizona class members purchased Defendants' DHA-fortified milk products in packages that uniformly stated that the products support brain health.

69.     Plaintiffs Auer and Sisneros and the Arizona class members read and relied on the accuracy of the representations on Defendants' advertising and marketing, including the DHA-fortified milk products packaging and labeling, in purchasing the products.

70.     Plaintiffs Auer and Sisneros and the Arizona class members have been actually injured by Defendants' false, misleading and fraudulent business acts and practices and are entitled to damages in the amount they paid for the DHA-fortified milk products.

71.    Plaintiffs Auer and Sisneros and the Arizona class members are entitled to equitable relief in the form of restitution of all monies paid for Defendants' DHA-fortified milk products and disgorgement of the profits Defendants received from the sale of the DHA-fortified milk products.

72.    Plaintiffs Auer and Sisneros and the Arizona class members also are entitled to an award of attorneys' fees and costs.

**COUNT II**
**For Violations of the Arkansas Deceptive Trade Practices Act, A.C.A. §4-88-101, *et seq.***
**(on Behalf of Plaintiff Hulsey and Consumers in AK, AR, CT, DC, DE, HI, KS, ME, MA,**
**MO, NE, NJ, NM, NY, RI, TX, VT, and WA)**

73.    Plaintiff Hulsey realleges and incorporates by reference the allegations contained in paragraphs 1-61 as if fully set forth herein.

74.    This count is brought pursuant to the Arkansas Deceptive Trade Practices Act as codified beginning at section 4-88-101, A.C.A., *et seq.* (the "DTPA"), which is designed to protect consumers from deceptive, unfair and unconscionable trade practices.  The DTPA is a remedial statute which is to be liberally construed in favor of consumers.

75.    Defendants are persons as defined by section 4-88-102(5), A.C.A.  The DHA-fortified milk products are goods as defined by section 4-88-102(4), A.C.A.

76.    Defendants engaged in consumer transactions with Plaintiff Hulsey and the consumers in the subclass states, which were intended to result in, and did result in, the sale of DHA-fortified milk to Plaintiff Hulsey and the consumers in the subclass states.

77.    Defendants' conduct described herein constitutes deceptive, unfair and unconscionable trade practices as defined by sections 4-88-107 and 44-88-108, A.C.A., including but not limited to Defendants' affirmative misrepresentations, false advertising, omissions of material facts regarding their DHA-fortified milk products and engaging in immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

78.     Defendants violated and continue to violate the DTPA by engaging in the following deceptive, unfair and unconscionable acts and practices, including, but not limited to those prescribed by the following subsections of sections 4-88-107 and 4-88-108, A.C.A.:

> A.C.A. §4-88-107(a): Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:
>
> (1) by "Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;" and
> (10) by "Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade;" and
>
> A.C.A. §4-88-108: When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful:
>
> (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or
>
> (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission.

79.     Defendants knew, or should have known, that the representations and material omissions were unsubstantiated, false, unfair, deceptive and/or unconscionable and otherwise have no reasonable basis in fact.

80.     Plaintiff Hulsey and the consumers in the subclass states reserve the right to allege other violations of DTPA as Defendants' conduct is ongoing.

81.     As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff Hulsey and the consumers in the subclass states have been damaged and are entitled to rescind the consumer transactions or recover actual damages.  In addition, Plaintiff Hulsey and the consumers in the subclass states seek equitable relief and to enjoin Defendants on terms that the Court deems reasonable.

82.     Pursuant to section 4-88-113, A.C.A., Plaintiff Hulsey and the consumers in the subclass states are entitled to attorneys' fees.

**COUNT III**
**For Violations of California Business & Professions Code §17200, *et seq.***
**(on Behalf of Plaintiff Barrera and Consumers in CA and OR)**

83.     Plaintiff Barrera realleges and incorporates by reference the allegations contained in paragraphs 1-61 as if fully set forth herein

84.     As alleged herein, Plaintiff Barrera has suffered injury in fact and lost money or property as a result of Defendants' conduct because he purchased the product in reliance on Defendants' brain health representation detailed above, but did not receive a product that supports brain health.

85.     The Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code, §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

86.     Plaintiff Barrera and the California and Oregon subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

87.     Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding their DHA-fortified milk products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

88.     As stated in this Complaint, Plaintiff Barrera and the California and Oregon subclass allege violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Defendants' acts and omissions also violate and offend the

public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

89.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

90.    Business & Professions Code § 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

91.    Defendants' actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq.*

92.    Plaintiff Barrera and other members of the California and Oregon subclass have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff Barrera and other members of the California and Oregon subclass who each purchased Defendants' DHA-fortified milk products. Plaintiff Barrera and the other California and Oregon subclass members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

93.    As a result of their deception, Defendants have been able to reap unjust revenue and profit.

94.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

95.    Plaintiff Barrera and the California and Oregon subclass seek restitution and an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

96.    Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff Barrera and the California and Oregon subclass make claims for attorneys' fees and costs.

## COUNT IV
### Violations of the California Consumers Legal Remedies Act – Civil Code §1750 *et seq.*
### (on Behalf of Plaintiff Barrera and Consumers in CA, MI, and PA)

97.     Plaintiff Barrera repeats and re-alleges the allegations contained in paragraphs 1-61, as if fully set forth herein.

98.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act"). Plaintiff Barrera is a consumer as defined by California Civil Code § 1761(d).  Defendants' DHA-fortified milk products are "goods" within the meaning of the Act.

99.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Barrera and the California, Michigan and Pennsylvania subclass which were intended to result in, and did result in, the sale of the DHA-fortified milk products:

(5)     Representing that [the DHA-fortified milk products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

\*        \*        \*

(7)     Representing that [the DHA-fortified milk products are] of a particular standard, quality or grade . . . if [they are] of another.

\*        \*        \*

(9)     Advertising goods . . . with intent not to sell them as advertised.

\*        \*        \*

(16)    Representing that [the DHA-fortified milk products have] been supplied in accordance with a previous representation when [they have] not.

100.    Defendants violated the Act by representing and failing to disclose material facts on the product labels and associated advertising, as described above, when they knew, or should have known, that the representations were unsubstantiated, false and misleading and that the omissions were of material facts they were obligated to disclose.

101.    Pursuant to California Civil Code § 1782(d), Plaintiff Barrera and the California, Michigan and Pennsylvania subclass seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

102.    Pursuant to section 1782 of the Act, by letter dated September 27, 2011, Plaintiff Barrera notified Defendants in writing by certified mail of the particular violations of section 1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the Act.  Therefore, Plaintiff Barrera and the California, Michigan and Pennsylvania subclass further seek claims for actual, punitive and statutory damages, as deemed appropriate.

103.    Pursuant to California Civil Code section 1780(e), Plaintiff Barrera and the California, Michigan and Pennsylvania subclass make claims for damages, attorneys' fees and costs.

**COUNT V**
**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statute §501.201** *et seq.*,
**(on Behalf of Plaintiffs Schucher, Gindele, Wilson and Consumers in AK, CT, DC, DE, FL,**
**HI, KS, ME, MA, MO, NE, NJ, NM, NY, RI, TX, VT, and WA)**

104.    Plaintiffs Schucher, Gindele and Wilson reallege and incorporate by reference the allegations contained in paragraphs 1-61 as if fully set forth herein.

105.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq.* ("FDUTPA").  The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

106.    Plaintiffs Schucher, Gindele, and Wilson are consumers as defined by section 501.203, Fla. Stat.  The DHA-fortified milk products are goods within the meaning of the FDUTPA.  Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

107.    Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  The FDUTPA also prohibits false and misleading advertising.

108.    Florida Statute section 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have misled – consumers acting reasonably in the circumstances, and violate section 500.04, Fla. Stat., and 21 U.S.C. § 343.

109.    Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

110.    Plaintiffs Schucher, Gindele, Wilson and the consumers in the subclass states have been aggrieved by Defendants' unfair and deceptive practices and acts of false advertising in that they paid for the DHA-fortified milk products that did not support brain health as represented.

111.    The harm suffered by Plaintiffs Schucher, Gindele, Wilson and the consumers in the subclass states was directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

112.    Pursuant to section 501.211(1), Fla. Stat., Plaintiffs Schucher, Gindele, Wilson and the consumers in the subclass states seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

113.    Additionally, pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Schucher, Gindele, Wilson and the consumers in the subclass states make claims for damages, attorneys' fees and costs.

**COUNT VI**
**For Violations of Illinois' Consumer Fraud Act, 815 ILCS 505/1,**
**(on Behalf of Plaintiff Walker and Consumers in AK, CT, DC, DE, HI, IL, KS, ME, MA,**
**MO, NE, NJ, NM, NY, RI, TX, VT, and WA)**

114.    Plaintiff Walker realleges and incorporates by reference the allegations contained in paragraphs 1-61 above as if fully set forth herein.

115.    In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), prohibits deceptive acts and practices in the sale of such products as Defendants' DHA-fortified milk products.

116.    Plaintiff Walker and the consumers in the subclass states were injured by Defendants' deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material, and deceived Plaintiff Walker and the consumers in the subclass states.

117.    Defendants do business in Illinois, sell and distribute their DHA-fortified milk products in Illinois, and engaged in deceptive acts and practices in connection with the sale of their DHA-fortified milk products in Illinois.

118.    Defendants' DHA-fortified milk products are "consumer items" as that term is defined under the Act.

119.    Defendants misrepresented and deceptively concealed, suppressed and/or omitted material information known to Defendants as set forth above concerning their DHA-fortified milk products, which has caused damage and injury to Plaintiff Walker and the consumers in the subclass states.

120.    Defendants' deceptive acts occurred in a course of conduct involving trade and commerce in Illinois.

121.    Plaintiff Walker and the consumers in the subclass states purchased the DHA-

fortified milk products and suffered actual damages, proximately caused by Defendants' unfair and deceptive acts and practices.

122.   Defendants intended for Plaintiff Walker and all consumers in the subclass states to rely on their deceptive acts.

123.   Plaintiff Walker and the consumers in the subclass states make claims for damages, attorneys' fees and costs.

**COUNT VII**
**Breach of Express Warranty**
**(on Behalf of Plaintiff Barrera and Consumers in AK, AL, CA, CO, CT, DC, HI, IN, KS, LA, NY, OH, WA, and WI)**

124.   Plaintiff Barrera realleges and incorporates by reference the allegations contained in paragraphs 1-61 as if fully set forth herein.

125.   The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

126.   Defendants expressly warranted in their marketing campaign and, specifically, on each and every carton of their DHA-fortified milk that it "supports brain health" in children and adults alike.  The brain health representation made by Defendants is an affirmation of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  Plaintiff Barrera and the consumers in the subclass states placed importance on Defendants' brain health representation.

127.   All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff Barrera and the consumers in the subclass states.

128.   Defendants were provided notice of these issues by, *inter alia*, the instant Complaint and its predecessors.

129.   Defendants breached the terms of this contract, including the express warranties, with Plaintiff Barrera and the consumers in the subclass states by not providing products that would support brain health as represented.

130.    As a result of Defendants' breach of their contract, Plaintiff Barrera and the consumers in the subclass states have been damaged in the amount of the price of the products they purchased.

**COUNT VIII**
**Unjust Enrichment**
**(on Behalf of Plaintiffs Schucher, Gindele, Wilson, Walker and Consumers in AK, AR, CO, CT, DC, FL, GA, HI, IL, IN, IA, KS, KY, MA, ME, MD, MO, NH, NM, NV, OK, PA, RI, SC, TN, UT, VT, WAS, WV, and WI)**

131.    Plaintiffs Schucher, Gindele, Wilson, and Walker repeat and reallege each and every allegation contained in paragraphs 1-61 above as if fully set forth herein.

132.    At all times relevant hereto, Defendants designed, manufactured, produced, promoted, marketed and/or sold the DHA-fortified milk products.

133.    Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass states conferred upon Defendants non-gratuitous payments for the DHA-fortified milk products. Defendants appreciated, accepted or retained the non-gratuitous benefits conferred by Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass states, with full knowledge and awareness that, as a result of Defendants' deceptive marketing, Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass states were not receiving DHA-fortified milk products of the quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected.

134.    Defendants profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass states, under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit.   Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits of this unjust enrichment.

135.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass states is unjust and inequitable, Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass

states are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

136.    Plaintiffs Schucher, Gindele, Wilson, and Walker and consumers in the subclass states do not have an adequate remedy at law against Defendants.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the subclasses as requested herein;

B.    Awarding Plaintiffs and the proposed subclass members damages;

C.    Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed subclass members;

D.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

E.    Awarding statutory and punitive damages, as appropriate;

F.    Ordering Defendants to engage in a corrective advertising campaign;

G.    Awarding attorneys' fees and costs; and

H.    Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 22, 2012                    Respectfully submitted,

s/ Lance A. Harke
Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel, P.A.
sengel@harkeclasby.com
Howard M. Bushman, P.A.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:    (305) 536-8220
Facsimile:    (305) 536-8229

Frank E. Piscitelli, Jr., Esq.
frank@feplaw.com
**PISCITELLI LAW FIRM**
6151 Wilson Mills Road, Suite 110
Highland Heights, OH 44143

Elaine A. Ryan, Esq.
eryan@bffb.com
Lindsey Gomez-Gray, Esq.
Lgomez-gray@bffb.com
Patricia N. Syverson, Esq.
psyverson@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012

*Proposed Co-Lead Interim Class Counsel
For Plaintiffs*

Ben Barnow
b.barnow@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600,
Chicago, Illinois 60602

Todd D. Carpenter
tcarpenter@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, California 92101

Sean T. Keith
sean@arkattorneys.com
**KEITH, MILLER, BUTLER,
SCHNEIDER & PAWLIK, PLLC**
224 South 2nd St.
Rogers, Arkansas 72756

Stewart Weltman, of counsel
sweltman@futtermanhoward.com
**LEVIN FISHBEIN SEDRAN &
BERMAN**
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603

Howard Sedran
hsedran@lfsblaw.com
**LEVIN, FISHBEIN, SEDRAN &
BERMAN**
510 Walnut Street
Philadelphia, Pennsylvania 19106

J. Andrew Meyer
ameyer@forthepeople.com
Tamra Givens
tgivens@forthepeople.com
Rachel Soffin
rsoffin@forthepeople.com
**MORGAN & MORGAN, PA**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

Scott W. Weinstein
Sweinstein@forthepeople.com
**MORGAN & MORGAN, PA**
12800 University Drive, Suite 600
Fort Myers, Florida

Joseph Siprut
jsiprut@siprut.com
**SIPRUT PC**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603

*Additional Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22 day of March, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

s/ Lance A. Harke

## SERVICE LIST

| | |
|---|---|
| J. Andrew Meyer<br>ameyer@forthepeople.com<br>Rachel Soffin<br>rsoffin@forthepeople.com<br>Tamra Carsten Givens<br>tgivens@forthepeople.com<br>Morgan and Morgan, P.A.<br>201 North Franklin Street<br>7th Floor<br>Tampa, FL 33602<br>Telephone: 813-223-5505<br>Telecopier:  813-223-5402<br><br>*Served Via CM/ECF Transmission* | Scott William Weinstein<br>sweinstein@forthepeople.com<br>Morgan & Morgan PA<br>PO Box 9504<br>Fort Myers, FL 33906-9504<br>Telephone: 239-433-6880<br>Telecopier:  239-433-6836<br><br>*Served Via CM/ECF Transmission* |
| Sean T. Keith<br>skeith@arkattorneys.com<br>Keith, Miller, Butler, Schmeider & Pawlik,<br>PLLC<br>224 South 2nd Street<br>Rogers, AR 72756<br>Telephone: 479-621-0006<br>Telecopier:  479-631-6890<br><br>*Served Via CM/ECF Transmission* | Charles C. Sweedler<br>csweedler@lfsblaw.com<br>Howard J. Sedran<br>hsedran@lfsblaw.com<br>Levin Fishbein Sedran & Berman<br>510 Wanut Street<br>Suite 500<br>Philadelphia, PA 19106<br>Telephone: 215-592-1500<br>Telecopier:  215-592-2663<br><br>*Served Via CM/ECF Transmission* |
| Stewart Weltman<br>sweltman@futtermanhoward.com<br>Dana Marie Pesha<br>dpesha@futtermanhoward.com<br>Futterman Howard Ashley Watkins &<br>Weltman, P.C.<br>122 South Michigan Avenue<br>Suite 1850<br>Chicago, IL 60603<br>Telephone: 312-427-3600<br><br>*Served Via CM/ECF Transmission* | Joseph Siprut<br>jsiprut@siprut.com<br>Siprut, PC<br>122 S Michigan Avenue<br>Chicago, IL 60603<br>Telephone: 312-588-1440<br><br>*Served Via CM/ECF Transmission* |

| | |
|---|---|
| Andrew Dylan Campbell<br>acampbell@novackandmacey.com<br>Novack and Macey, LLP<br>100 North Riverside Plaza<br>Chicago, IL 60606<br>Telephone: 312-419-6900<br><br>*Served Via CM/ECF Transmission* | Randall J. Sunshine<br>rsunshine@linerlaw.com<br>Angela C. Agrusa<br>aagrusa@linerlaw.com<br>Liner, Grode, Stein, Yankelevitz,<br>Sunshine, et al.<br>1100 Glendon Avenue<br>14th Floor<br>Los Angeles, CA 90024<br>Telephone: 310-500-3500<br><br>*Served Via CM/ECF Transmission* |
| Mitchell L. Marinello<br>mmarinello@novackmacey.com<br>Novack and Macey LLP<br>Suite 1500<br>303 West Madison Street<br>Chicago, IL 60606<br>Telephone: 312-419-6900<br><br>*Served Via CM/ECF Transmission* | Elaine A. Ryan<br>eryan@bffb.com<br>Patricia Nicole Syverson<br>psyverson@bffb.com<br>Lindsey Gomez-Gray<br>Lgomez-gray@bffb.com<br>Bonnett Fairbourn Friedman & Balint PC<br>2901 N Central Avenue<br>Suite 1000<br>Phoenix, AZ 85012<br>Telephone: 602-274-1100<br><br>*Served Via CM/ECF Transmission* |
| Manfred Patrick Muecke , Jr.<br>mmuecke@bffb.com<br>Bonnett Fairbourn Friedman and Balint, PC<br>600 West Broadway<br>Suite 900<br>San Diego, CA 92101<br>Telephone: 619-756-7748<br>Telecopier:  602-274-1199<br><br>*Served Via CM/ECF Transmission* | David Storrs Wood<br>david.wood@akerman.com<br>Akerman Senterfitt<br>420 South Orange Avenue - Suite 1200<br>Orlando, FL 32801<br>Telephone: 407-419-8548<br>Telecopier:  407-254-4207<br><br>*Served Via CM/ECF Transmission* |

| Lawrence Dean Silverman<br>lawrence.silverman@akerman.com<br>Sandra Jessica Millor<br>sandra.millor@akerman.com<br>Akerman Senterfitt<br>1 Southeast Third Avenue<br>25th Floor<br>Miami, FL 33131<br>Telephone: 305-374-5600<br>Telecopier:  305-374-5095<br><br>*Served Via CM/ECF Transmission* | Margaret Diane Mathews<br>margaret.mathews@akerman.com<br>Akerman Senterfitt<br>401 E. Jackson Street<br>Suite 1700<br>Tampa, FL 33602-5803<br>Telephone: 813-223-2837<br><br>*Served Via CM/ECF Transmission* |
|---|---|
| Frank E. Piscitelli, Jr.<br>frank@feplaw.com<br>Piscitelli Law Firm<br>6151 Wilson Mills Road<br>Suite 110<br>Highland Heights, OH 44143<br>Telephone: 216-931-7000<br><br>*Served Via CM/ECF Transmission* | |