**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN**

IN RE: HORIZON ORGANIC MILK
PLUS DHA OMEGA-3 MARKETING
AND SALES PRACTICE LITIGATION

This Filing Relates to:

Schucher v. WhiteWave Foods Company
Case No.: 1:11-CV-23807-JAL
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT FOR**
**PLAINTIFF MICHELLE SCHUCHER**

  Plaintiff Michelle Schucher, by and through her attorneys, brings this action on behalf of

herself and all others similarly situated, against Defendant WhiteWave Foods Company

("WFC") and states:

**NATURE OF ACTION**

  1.  WFC manufactures, distributes, markets and sells nationwide five milk products

fortified with highly processed fermented algae known as "DHA" under its brand names

"Horizon Organic" and "Silk."[1] Through an extensive, widespread, comprehensive and uniform

nationwide marketing campaign, WFC claims that consuming its premium priced DHA-fortified

milk will support brain health in children and adults of all ages.  Front and center and

prominently featured by itself in a banner running across the front of each and every milk carton,

WFC states "DHA Omega-3 Supports Brain Health."  The brain health representation also

prominently appears on the top, the back and the left side panel of every milk carton.

  2.  In truth, the DHA-fortified milk products do not support brain health in children

or adults.  WFC also does not have competent and reliable scientific evidence to support its brain

_____

[1] These products include: (1) Horizon Organic Whole Milk plus DHA Omega-3; (2) Horizon
Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA
Omega-3; (4) Horizon Organic Chocolate Milk plus DHA Omega-3; and (5) Silk DHA Omega-3
& Calcium All Natural Soy Milk (collectively, "DHA-fortified milk" or "the products").

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

health representation. Clinical cause and effect studies have found no causative link between DHA algal oil supplementation and brain health.  WFC's brain health representation is false, misleading, and reasonably likely to deceive the public.

3.      WFC has employed numerous methods to convey its uniform, deceptive brain health representation to consumers, including print, radio and television advertisements, the Internet, social media websites and, importantly, on the front of the products' packaging and labeling where it cannot be missed by consumers.  The only reason a consumer would purchase the premium-priced DHA-fortified milk products is to obtain the advertised health benefit, which the products do not provide.

4.      As a result of WFC's deceptive brain health representation, consumers – including Plaintiff and members of the proposed Class – have purchased a product that does not perform as advertised.  Moreover, Plaintiff has paid a significant price premium for WFC's DHA-fortified milk products over other comparable products, including WFC's other organic and soy milk products that do not make the deceptive brain health representation.  For example, on average, a 1/2 gallon of Horizon Organic Milk plus DHA Omega-3 retails between .20 and .50 cents more than WFC's Horizon Organic Milk without the DHA additive.  Similarly, a 1/2 gallon of Silk DHA Omega-3 retails between .20 and .70 cents more than Silk Soy Milk without the DHA additive.

5.      Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased the products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the DHA-fortified milk products.  Based on violations of state unfair competition laws (described below), and unjust enrichment, Plaintiff seeks injunctive and monetary relief for consumers who purchased the DHA-fortified milk products.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from WFC.

7.      This Court has personal jurisdiction over WFC because WFC is authorized to do business and is conducting business throughout the United States, including in Florida. WFC has marketed, promoted, distributed, and sold the DHA-fortified milk products in the United States, including Florida, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

8.      Venue is proper in this Court pursuant to the February 9, 2012 Transfer Order by the United States Judicial Panel on Multidistrict Litigation (D.E. 31), and pursuant to 28 U.S.C. § 1391. Further, many of the acts and transactions giving rise to this action occurred in this District and WFC is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of the DHA-fortified milk products in this District and is subject to personal jurisdiction in this District.

## PARTIES

9.      Plaintiff Michelle Schucher ("Plaintiff Schucher") is a citizen of Miami-Dade County, Florida. Beginning in 2010, Plaintiff Schucher purchased multiple 1/2 gallon cartons of Silk DHA Omega-3 & Calcium Milk at Publix and Whole Foods markets in Miami-Dade County. Prior to purchasing these products, Plaintiff Schucher was exposed to and saw WFC's brain health representation by reading the Silk DHA Omega-3 Milk label. Relying on the brain health representation, Plaintiff Schucher purchased and consumed Silk DHA Omega-3 Milk, believing the product supported brain health. The Silk DHA Omega-3 Milk Plaintiff purchased does not support brain health as represented. As a result, Plaintiff Schucher suffered injury in

fact and lost money.  Had Plaintiff Schucher known the truth about WFC's misrepresentations and omissions, including that there is no scientific evidence to support the brain health representation, she would not have purchased and consumed Silk DHA Omega-3 Milk.

10.     Defendant WFC is a wholly-owned subsidiary of Dean Foods Company.  WFC is organized and existing under the laws of the state of Delaware.  WFC's headquarters is at 12002 Airport Way, Broomfield, Colorado 80021. WFC manufactured, advertised, marketed, and sold the DHA-fortified milk to tens of thousands of consumers nationwide, including Florida.  WFC also distributed the false, misleading and deceptively labeled DHA-fortified milk to consumers throughout the United States from its five regional distribution centers located in California, Florida, New Jersey, Utah and Virginia.

## FACTUAL ALLEGATIONS

### *The DHA-fortified Products*

11.     WFC manufactures, distributes, markets and sells nationwide, including in Florida a variety of branded dairy, soy and plant-based beverages.  This lawsuit concerns five of those products: (1) Horizon Organic Whole Milk plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Milk plus DHA Omega-3; and (5) Silk DHA Omega-3 & Calcium All Natural Soy Milk.

12.     WFC's DHA-fortified milk products are sold in virtually every major food, drug, and mass retail outlet in the country.  One-half gallon of Horizon Organic Milk plus DHA Omega-3 retails for approximately $5.00 to $6.00.  One-half gallon of Silk DHA Omega-3 Milk retails for approximately $4.00-5.00.  The following are screen shots of the products:

    

13.     Since the products' launch in 2007, WFC has consistently conveyed the message to consumers throughout the United States, including in Florida, that its DHA-fortified milk products "support[] brain health" in children and adults.  They do not.  WFC's brain health representation is false, misleading and deceptive.

14.     All the products WFC manufactures, markets, and sells contain algal DHA.  One common type of DHA is a long-chain omega-3 fatty acid typically found in cold water fish.  However, the DHA in WFC's milk products is not derived from fish oil.  Instead, the DHA oil found in WFC's milk is an immature short-chain Omega-3 fatty acid made from an extract of mutated and fermented algae.  Contrary to WFC's representations made in its advertising campaign, including on each and every milk carton, DHA algal oil does not support brain health.

*WFC's Deceptive Advertising and Marketing of DHA-fortified Milk*

15.     In 2007, WFC began selling the DHA-fortified milk products.  Also in 2007, WFC launched a major advertising campaign to promote the products, conveying a substantially similar message about the health benefits DHA-fortified milk provides.

16.     For example, each and every product package and label repeatedly emphasizes that DHA-fortified milk supports brain health.  Every consumer who purchases the products is exposed to this deceptive brain health representation, which appears prominently and conspicuously on the front and in the center of each carton as follows:

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN




17.   The entire backside of the cartons is similarly dedicated to promoting the DHA algal oil in WFC's products and its purported ability to support brain health:

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

 

18.     The brain health representation also appears on the top of the Horizon Organic Milk plus DHA Omega-3 cartons:



19.     It appears again on the left-side panel of the Horizon Organic Milk plus DHA Omega-3 cartons, with the added representation that "DHA may make a big difference for kids and adults alike":

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN



20.     WFC's websites, http://silksoymilk.com/products/silk-wellness/dha-omega-3-and-calcium and www.horizondairy.com, which are available to the general public, also contain substantially similar deceptive messages about the ability of the products to support brain health. The following screen shots are illustrative:

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN



## Silk® DHA Omega-3 & Calcium

Treat your body to the triple benefit of DHA Omega-3, extra calcium and the goodness of soy—all with the signature smooth flavor you expect from Silk. Delicious over cereal, in recipes or straight-up in a glass.

40% of the recommended daily calcium in every glass—that's 30% more calcium than milk[1]—to support strong, healthy bones.

32 mg of DHA Omega-3, shown to help build the brain and support heart health.[2]

7 grams of nourishing soy protein to help keep you satisfied.

Plus, Silk DHA Omega-3 & Calcium comes with zero cholesterol, absolutely no lactose and a healthy dose of optimism.

+ Nutritional Information



Life's DHA is a registered trademark of Martek biosciences corporation.

[1] Silk DHA Omega-3 & Calcium, 400 mg calcium/serving; 2% milk, 285 mg calcium/serving.

[2] Bourre J.M. Biomed Parmacother. 2007 Feb.-Apr.; 61(2-3): 105-12.



Learn More



nongmoproject.org

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

21.     WFC's Horizon Dairy website also attributes the alleged brain health benefit to the inclusion of the DHA Omega-3 additive, which WFC touts as "a valuable nutrient that supports the brain" and a "choice for every member of the family":



22.     Similarly, print advertisements claim that Horizon Organic Milk plus DHA Omega-3 supports "healthy brain development":



23.     Through its labeling and advertising statements concerning the DHA-fortified milk products – including those referenced above – WFC has uniformly conveyed one message: the DHA-fortified milk products "support[] brain health" in children and adults.  They do not.

### WFC's Brain Health Representation Is Not Supported By Scientific Evidence

24.     There are no competent and reliable scientific studies that DHA algal oil supplementation supports brain health.  The one and only "reference" identified on the Horizon Organic Milk plus DHA Omega-3 package, Kris-Etherton, PM, et al., Am. J. Clin. Nutr. 2000;71(suppl):179S-88S, is a review on the consumption practices and sources of Omega-3 fatty acids in U.S. diets.  The review did not address – let alone support – the claim that DHA algal oil supplementation supports brain health.

25.     In an attempt to bolster its false and deceptive message, WFC identifies on its websites five other clinical publications that purportedly substantiate the brain health claim, but fail to do so.[2]

26.     The first citation is to a policy statement from the International Society for the Study of Fatty Acids and Lipids ("ISSFAL") concerning the dietary fat intake of pregnant and lactating women.  *See* ISSFAL Policy Statement 4: Recommendations for intake of polyunsaturated fatty acids by pregnant and lactating women (2009).[3]  Not only did the ISSFAL study look at pregnant and lactating women, not the general population to which WFC markets the products, it also analyzed the importance of fish intake and did not mention plant-based DHA or supplementation.  *Id.* at 1.  To that end, the group recommended that pregnant and lactating women "should aim to achieve dietary intake of n-3 LC-PUFA that supplies a DHA intake of at least 200 mg/day." *Id.* at 3.  That recommendation would require pregnant and lactating women to drink almost an entire carton of milk fortified with fish oil-based DHA every day.

---

[2] Four of the publications are available on the Horizon Organic Milk plus DHA Omega-3 website, from a "facts about DHA" pdf, http://www.horizondairy.com/wpcontent/themes/horizon /pdf/HorizonOrganic_ DHA_FactSheet.pdf (last visited Feb. 16, 2011).  The final publication is listed on the Silk DHA Omega-3 website.
[3] The ISSFAL Policy Statement was originally published as Koletzko B., et al., *Dietary Fat Intakes For Pregnant And Lactating Women,* 98 British J. of Nutrition, 1-5 (2007).

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

27.     The second citation, Jensen C.L., et al., *Effects Of Early Maternal Docosahexaenoic Acid Intake On Neuropsychological Status And Visual Acuity At Five Years Of Age Of Breast-Fed Term Infants*, 157(6) J. Pediatr. 900-05 (2010) (the "Jensen Study") also fails to support the brain health representation.  The Jensen study did not examine whether DHA enriched milk supports brain health in children or adults, but instead addressed whether there were observational effects "on neurodevelopmental status and visual function in the recipient infant" who received DHA supplementation during breastfeeding.  *Id.* at 125.  On the issue of cognitive development in infants, the study is inconclusive, finding that while "formula-fed infants may benefit from a formula with a DHA content in excess of 0.2% of total fatty acids," "additional studies are required to determine whether this apparent advantage is real, whether this advantage persists, and whether other delayed effects of early DHA availability emerge."  *Id.*

28.     The third citation, McCann, J.C., & Ames, B.N., *Is Docosahexaenoic Acid, An N_3 Long-Chain Polyunsaturated Fatty Acid, Required For Development Of Normal Brain Function? An Overview Of Evidence From Cognitive And Behavioral Tests In Humans And Animals*, 82 Am. J. Clin. Nutr. 281-95 (2005) ("the McCann study"), a review, looked at a limited number of human and animal studies. The human studies were further limited to pregnant and lactating women and infants, not the target population for the products. The review authors expressly emphasized that the trials most capable of providing definitive, competent and reliable evidence – "have yielded mixed results" and overall, "the evidence is insufficient to conclude that LCPUFA supplementation benefited [cognitive] development."  *Id.*

29.     The fourth citation, Dalton, A., et al., *A Randomized Control Trial In Schoolchildren Showed Improvement In Cognitive Function After Consuming A Bread Spread, Containing Fish Flour From A Marine Source*, 80(2-3) Prostaglandins Leukot Essent Fatty Acids 143-49 (2009), did not include analysis on supplementation of products like milk with plant-based DHA.  Instead, subject participants received fish-flour spread or a placebo spread for 6 months.  *Id.*

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

30.     The final review article, also referenced on the Silk DHA Omega-3 Milk carton,
Bourre J.M., *Dietary Omega-3 Fatty Acids For Women*, 61(2-3) Biomed Pharmacother. 105-12
(2007), explains why women need Omega-3s, particularly during pregnancy and while breast
feeding.  The study finds that Omega-3s may benefit women by preventing development of
certain cancers and diseases, but that the "only good sources [of DHA Omega-3s] are fish and
seafood, together with 'omega-3' eggs." *Id.*  The article does not address whether Omega-3
supplementation improves cognitive function and does not reference Omega-3s in milk products.

31.     None of these studies constitute competent and reliable scientific evidence that
the DHA-fortified milk products support brain health because, *inter alia*, the studies, preclinical
or otherwise, involve pregnant and lactating women or infants not the target population, test
irrelevant endpoints, are inconclusive and do not analyze DHA Omega-3 in the quantity or
medium delivered by the products.

32.     Indeed, clinical cause and effect studies establish that WFC's brain health
representation is false and deceptive.  For example, in Kirby, A., et. al., *A Double-Blind,
Placebo-Controlled Study Investigating the Effects of Omega-3 Supplementation in Children
Aged 8-10 Years from a Mainstream School Population*, 31(3) Research in Developmental
Disabilities 718-30 (2010), the study's authors examined the effects of DHA supplementation on
450 students, aged 8-10 years old for 16 weeks.  *Id.* at 720.  The study's authors found that,
despite the wide range of cognitive and behavior outcomes used, DHA supplementation resulted
in no significant differences in cognitive results:  "very few significant differences were found
between the supplemented and placebo group on the learning and performance measure[s] used."
*Id.* at 729.

33.     Similarly, a 2008 study funded by Martek Biosciences, the manufacturers of the
algal DHA in the products, concluded that there was no statistically significant difference
between the DHA and placebo group in cognitive function. *See* Ryan, A., et al., *Assessing the
Effect of Docosahexaenoic Acid on Cognitive Functions in Healthy Preschool Children*, 47(4)

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

Clin. Pediatr. 355-62 (2008) (the Ryan Study);[4] *see also* Eilander, A., et al., *Effects of n-3 Long Chain Polyunsaturated Fatty Acid Supplementation On Visual And Cognitive Development Throughout Childhood: A Review Of Human Studies*, 76(4) J. Prostaglandins, Leukotrienes and Essential Fatty Acids 189-203 (Apr. 2007) ("Evidence for benefits of n-3 LCPUFA on cognitive development in healthy children older than 2 years of age is too limited to allow a clear conclusion.").

34.     Based on the lack of confirming scientific evidence, the Federal Trade Commission ("FTC") recently examined WFC's brain health representations as part of its ongoing monitoring program.  In light of the FTC's investigation, WFC modified its radio, television, print and online advertisements.  WFC has not changed the product labels and packaging, which every purchaser, including the plaintiff, is necessarily exposed to at the point of sale.

35.     WFC did not and does not have competent and reliable scientific evidence that the DHA algal oil in its milk products supports brain health.  In fact, competent and reliable scientific studies have found no cause and effect relationship between intake of milk supplemented with DHA algal oil and cognitive development.    WFC's brain health representation is false and misleading and reasonably likely to deceive the average consumer.

### The Impact of WFC's Wrongful Conduct

36.     Despite inadequate, inapplicable and inconclusive testing, WFC continues to unequivocally and falsely claim that its products "support[] brain health" for children and adults alike.

37.     As the manufacturer and distributor of the DHA-fortified milk products, WFC possesses specialized knowledge regarding the content and effects of the ingredients contained in its products and is in a superior position to learn of the effects – and has learned of the effects – its products have on consumers.

---

[4] This study examined 175 four-year old children who received either 400 mg/d of DHA or a placebo in capsules for 4 months.

- 14 -

38.     Specifically, WFC knew or should have known, but failed to disclose that it had no competent and reliable scientific evidence that its DHA-fortified milk products support brain health and that well conducted, clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

39.     Nonetheless, WFC conveyed and continues to convey one uniform false message: DHA-fortified milk supports brain health in children and adults of all ages.

40.     Plaintiff and Class members have been and will continue to be deceived or misled by WFC's false and deceptive brain health representation.  Plaintiff purchased and consumed the products during the relevant time period and in doing so, read and considered the product labels and other advertisements, and based her decision to buy the products on the false brain health representation.  WFC's false and misleading brain health representation and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the products. Plaintiff would not have purchased the products had she known that WFC's claims were false and misleading, that WFC did not possess competent and reliable scientific evidence to support its brain health representation, and that clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

41.     As a result, Plaintiff and the Class members have been damaged in their purchases of these products and have been deceived into purchasing products that they believed, based on WFC's false representations, supported brain health, when, in fact, they do not.

42.     Based upon the purported false and misleading brain health benefit conveyed in its marketing and advertising, WFC is able to price its DHA-fortified milk products at a premium over other milk products, organic or otherwise, without the additive.  In fact,  a 1/2 gallon of Horizon Organic Milk plus DHA Omega-3 retails between .20 and .50 cents more than WFC's Horizon Organic Milk without the DHA additive, while a 1/2 gallon of Silk DHA Omega-3 retails between .20 and .70 cents more than Silk Soy Milk without the DHA additive.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

## CLASS DEFINITION AND ALLEGATIONS

43.     As detailed below in the individual counts, Plaintiff brings this lawsuit on behalf of herself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

44.     Plaintiff seeks to represent the following classes:[5]

(1)     <u>Multi-State Deceptive and Unfair Trade Practices Class</u>

All consumers from Florida, Alaska, Arkansas, California, Connecticut, Delaware, Hawaii, Illinois, Idaho, Kansas, Nebraska, New Jersey, New Mexico, New York, Rhode Island, South Carolina, Texas, Tennessee, Vermont, and Washington who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

Or in the alternative:

<u>Florida-Only Deceptive and Unfair Trade Practices Class</u>
All consumers from Florida who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

(2)     <u>Multi-State Unjust Enrichment Class</u>

All consumers from Florida, Alaska, Arkansas, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Indiana, Iowa, Kansas, Kentucky, Massachusetts, Maine, Maryland, Missouri, New Mexico, New Hampshire, Nevada, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, West Virginia and Wisconsin who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

Or in the alternative:

<u>Florida-Only Unjust Enrichment Class</u>
All consumers from Florida who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

45.     Excluded from the above classes and alternative classes are WFC and its officers, directors and employees and those who purchased the DHA-fortified milk products for resale.

---

[5] Plaintiff reserves the right to amend or alter the following Classes pending discovery in this case.

46.    *Numerosity*.   The classes are comprised of tens of thousands of consumers throughout the United States, including Florida and the other states for which Plaintiff seeks class certification.   The classes are so numerous that joinder of all members of the classes is impracticable.   The precise number of class members is unknown to Plaintiff.

47.    ***Existence and Predominance of Common Questions of Law and Fact***.   This action involves common questions of law and fact, which predominate over any questions affecting individual class members.   These common legal and factual questions include, but are not limited to, the following:

(a)    whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b)    whether WFC had adequate substantiation for its brain health representation prior to disseminating those claims to the consuming public;

(c)    whether consumers paid a premium for the DHA-fortified milk products;

(d)    whether WFC's alleged conduct violates public policy;

(e)    whether the alleged conduct constitutes violations of the laws asserted;

(f)    whether WFC engaged in false or misleading advertising;

(g)    whether WFC has been unjustly enriched at the expense of Plaintiff and the Class members as a result of WFC's false and misleading representations;

(h)    whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(i)    whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

48.    ***Typicality***.   Plaintiff's claims are typical of the claims of the members of the classes because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to WFC's deceptive brain health statements, including the deceptive brain health representation that accompanied each and every carton of DHA-fortified

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

milk.   Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Classes.

49.    ***Adequacy of Representation***.   Plaintiff will fairly and adequately protect the interests of the members of the Class.   Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the classes.

50.    ***Superiority***.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually.  The trial and the litigation of Plaintiff's claims are manageable.

51.    WFC has acted and refused to act on grounds generally applicable to the classes by engaging in a uniform marketing and advertising campaign containing false, misleading and deceptive representations and material omissions that misled Plaintiff and the Class, thereby making appropriate final injunctive relief with respect to the classes as a whole.

**COUNT I**
**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**§ 501.201, Florida Statutes, *et seq.***
**(On behalf of Plaintiff Schucher and Members of the Multi-State or Florida-Only Class)**

52.    Plaintiff Schucher realleges and incorporates by reference the allegations contained in paragraphs 1-51 as if fully set forth herein.

53.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq*. ("FDUTPA") and similar laws in other states.  The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

54.    Plaintiff Schucher is a consumer as defined by section 501.203, Fla. Stat.  The DHA-fortified milk products are goods within the meaning of the FDUTPA.  WFC is engaged in trade or commerce within the meaning of the FDUTPA.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

55.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."   The FDUTPA also prohibits false and misleading advertising.

56.     Florida Statute section 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."   WFC's unfair and deceptive practices are likely to mislead – and have misled – consumers acting reasonably in the circumstances, and violate section 500.04, Fla. Stat., and 21 U.S.C. § 343.

57.     WFC has violated the FDUTPA and similar laws in other states by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

58.     Plaintiff Schucher and the consumers in the class states have been aggrieved by WFC's unfair and deceptive practices and acts of false advertising in that they paid for the DHA-fortified milk products that did not support brain health as represented.

59.     The harm suffered by Plaintiff Schucher and the consumers in the class states was directly and proximately caused by the deceptive, misleading and unfair practices of WFC, as more fully described herein.

60.     Pursuant to section 501.211(1), Fla. Stat., Plaintiff Schucher and the consumers in the class states seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of WFC and for restitution and disgorgement.

61.     Additionally, pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Schucher, and the consumers in the class states make claims for damages, attorneys' fees and costs.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

## COUNT II
## Unjust Enrichment
### (On behalf of Plaintiff Schucher and Members of the Multi-State or Florida-Only Class)

62.     Plaintiff Schucher repeats and realleges each and every allegation contained in paragraphs 1-51 above as if fully set forth herein.

63.     At all times relevant hereto, WFC designed, manufactured, produced, promoted, marketed and/or sold the DHA-fortified milk products.

64.     Plaintiff Schucher and consumers in the class states conferred upon WFC non-gratuitous payments for the DHA-fortified milk products.  WFC appreciated, accepted or retained the non-gratuitous benefits conferred by Plaintiff Schucher and consumers in the class states, with full knowledge and awareness that, as a result of WFC's deceptive marketing, Plaintiff Schucher and consumers in the class states were not receiving DHA-fortified milk products of the quality, nature, fitness or value that had been represented by WFC and reasonable consumers would have expected.

65.     WFC profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff Schucher and consumers in the class states, under circumstances in which it would be unjust for WFC to be permitted to retain the benefit.  Under common law principles of unjust enrichment, WFC should not be permitted to retain the benefits of this unjust enrichment.

66.     Because WFC's retention of the non-gratuitous benefits conferred by Plaintiff Schucher and consumers in the class states is unjust and inequitable, Plaintiff Schucher and consumers in the class states are entitled to, and hereby seek disgorgement and restitution of WFC's wrongful profits, revenue, and benefits in a manner established by the Court.

67.     Plaintiff Schucher and consumers in the class states do not have an adequate remedy at law against WFC.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

      A.      Certifying the classes as requested herein;

      B.      Awarding Plaintiff and the proposed class members damages;

      C.      Awarding restitution and disgorgement of WFC's revenues to Plaintiff and the proposed class members;

      D.      Awarding injunctive relief as permitted by law or equity, including enjoining WFC from continuing the unlawful practices as set forth herein, and directing WFC to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

      E.      Awarding statutory damages, as appropriate;

      F.      Ordering WFC to engage in a corrective advertising campaign;

      G.      Awarding attorneys' fees and costs; and

      H.      Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 30, 2012

Respectfully submitted,

s/ Lance A. Harke
Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel, P.A.
sengel@harkeclasby.com
Howard M. Bushman, P.A.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:    (305) 536-8220
Facsimile:     (305) 536-8229

*Interim Co-Lead Class Counsel and Liaison Counsel for Plaintiffs*

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

Frank E. Piscitelli, Jr., Esq.
frank@feplaw.com
**PISCITELLI LAW FIRM**
6151 Wilson Mills Road, Suite 110
Highland Heights, OH 44143

Elaine A. Ryan, Esq.
eryan@bffb.com
Lindsey Gomez-Gray, Esq.
Lgomez-gray@bffb.com
Patricia N. Syverson, Esq.
psyverson@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012

*Interim Co-Lead Class Counsel and Liaison
Counsel for Plaintiffs*

Ben Barnow
b.barnow@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600,
Chicago, Illinois 60602

Todd D. Carpenter
tcarpenter@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, California 92101

Sean T. Keith
sean@arkattorneys.com
**KEITH, MILLER, BUTLER,
SCHNEIDER & PAWLIK, PLLC**
224 South 2nd St.
Rogers, Arkansas 72756

Stewart Weltman, of counsel
sweltman@futtermanhoward.com
**LEVIN FISHBEIN SEDRAN &
BERMAN**
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603

Howard Sedran
hsedran@lfsblaw.com
**LEVIN, FISHBEIN, SEDRAN &
BERMAN**
510 Walnut Street
Philadelphia, Pennsylvania 19106

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

J. Andrew Meyer
ameyer@forthepeople.com
Tamra Givens
tgivens@forthepeople.com
Rachel Soffin
rsoffin@forthepeople.com
**MORGAN & MORGAN, PA**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

Scott W. Weinstein
Sweinstein@forthepeople.com
**MORGAN & MORGAN, PA**
12800 University Drive, Suite 600
Fort Myers, Florida

Joseph Siprut
jsiprut@siprut.com
**SIPRUT PC**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603

*Additional Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 30th day of July, 2012, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

documents is being served this day on all counsel of record or pro se parties identified on the

attached Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF or in some other authorized manner for those counsel or parties

who are not authorized to receive electronically Notices of Electronic filing.

s/ Lance A. Harke

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

### SERVICE LIST

| | |
|---|---|
| J. Andrew Meyer<br>ameyer@forthepeople.com<br>Rachel Soffin<br>rsoffin@forthepeople.com<br>Tamra Carsten Givens<br>tgivens@forthepeople.com<br>Morgan and Morgan, P.A.<br>201 North Franklin Street<br>7th Floor<br>Tampa, FL 33602<br>Telephone: 813-223-5505<br>Telecopier: 813-223-5402<br><br>*Served Via CM/ECF Transmission* | Scott William Weinstein<br>sweinstein@forthepeople.com<br>Morgan & Morgan PA<br>PO Box 9504<br>Fort Myers, FL 33906-9504<br>Telephone: 239-433-6880<br>Telecopier: 239-433-6836<br><br>*Served Via CM/ECF Transmission* |
| Sean T. Keith<br>skeith@arkattorneys.com<br>Keith, Miller, Butler, Schmeider & Pawlik,<br>PLLC<br>224 South 2nd Street<br>Rogers, AR 72756<br>Telephone: 479-621-0006<br>Telecopier: 479-631-6890<br><br>*Served Via CM/ECF Transmission* | Charles C. Sweedler<br>csweedler@lfsblaw.com<br>Howard J. Sedran<br>hsedran@lfsblaw.com<br>Levin Fishbein Sedran & Berman<br>510 Wanut Street<br>Suite 500<br>Philadelphia, PA 19106<br>Telephone: 215-592-1500<br>Telecopier: 215-592-2663<br><br>*Served Via CM/ECF Transmission* |
| Stewart Weltman<br>sweltman@futtermanhoward.com<br>Dana Marie Pesha<br>dpesha@futtermanhoward.com<br>Futterman Howard Ashley Watkins &<br>Weltman, P.C.<br>122 South Michigan Avenue<br>Suite 1850<br>Chicago, IL 60603<br>Telephone: 312-427-3600<br><br>*Served Via CM/ECF Transmission* | Joseph Siprut<br>jsiprut@siprut.com<br>Siprut, PC<br>122 S Michigan Avenue<br>Chicago, IL 60603<br>Telephone: 312-588-1440<br><br>*Served Via CM/ECF Transmission* |

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

| | |
|---|---|
| Andrew Dylan Campbell<br>acampbell@novackandmacey.com<br>Novack and Macey, LLP<br>100 North Riverside Plaza<br>Chicago, IL 60606<br>Telephone: 312-419-6900<br><br>*Served Via CM/ECF Transmission* | Randall J. Sunshine<br>rsunshine@linerlaw.com<br>Angela C. Agrusa<br>aagrusa@linerlaw.com<br>Liner, Grode, Stein, Yankelevitz,<br>Sunshine, et al.<br>1100 Glendon Avenue<br>14th Floor<br>Los Angeles, CA 90024<br>Telephone: 310-500-3500<br><br>*Served Via CM/ECF Transmission* |
| Mitchell L. Marinello<br>mmarinello@novackmacey.com<br>Novack and Macey LLP<br>Suite 1500<br>303 West Madison Street<br>Chicago, IL 60606<br>Telephone: 312-419-6900<br><br>*Served Via CM/ECF Transmission* | Elaine A. Ryan<br>eryan@bffb.com<br>Patricia Nicole Syverson<br>psyverson@bffb.com<br>Lindsey Gomez-Gray<br>Lgomez-gray@bffb.com<br>Bonnett Fairbourn Friedman & Balint PC<br>2901 N Central Avenue<br>Suite 1000<br>Phoenix, AZ 85012<br>Telephone: 602-274-1100<br><br>*Served Via CM/ECF Transmission* |
| Manfred Patrick Muecke, Jr.<br>mmuecke@bffb.com<br>Bonnett Fairbourn Friedman and Balint, PC<br>600 West Broadway<br>Suite 900<br>San Diego, CA 92101<br>Telephone: 619-756-7748<br>Telecopier:  602-274-1199<br><br>*Served Via CM/ECF Transmission* | David Storrs Wood<br>david.wood@akerman.com<br>Akerman Senterfitt<br>420 South Orange Avenue - Suite 1200<br>Orlando, FL 32801<br>Telephone: 407-419-8548<br>Telecopier:  407-254-4207<br><br>*Served Via CM/ECF Transmission* |

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

| | |
|---|---|
| Lawrence Dean Silverman<br>lawrence.silverman@akerman.com<br>Sandra Jessica Millor<br>sandra.millor@akerman.com<br>Akerman Senterfitt<br>1 Southeast Third Avenue<br>25th Floor<br>Miami, FL 33131<br>Telephone: 305-374-5600<br>Telecopier:  305-374-5095<br><br>*Served Via CM/ECF Transmission* | Margaret Diane Mathews<br>margaret.mathews@akerman.com<br>Akerman Senterfitt<br>401 E. Jackson Street<br>Suite 1700<br>Tampa, FL 33602-5803<br>Telephone: 813-223-2837<br><br>*Served Via CM/ECF Transmission* |
| Frank E. Piscitelli, Jr.<br>frank@feplaw.com<br>Piscitelli Law Firm<br>6151 Wilson Mills Road<br>Suite 110<br>Highland Heights, OH 44143<br>Telephone: 216-931-7000<br><br>*Served Via CM/ECF Transmission* | |