UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

IN RE: HORIZON ORGANIC MILK
PLUS DHA OMEGA-3 MARKETING
AND SALES PRACTICE LITIGATION

This Filing Relates to:

Barrera v. WhiteWave Foods Company
Case No.: 1:12-CV-20615-JAL
_____/

SECOND AMENDED CLASS ACTION COMPLAINT FOR
PLAINTIFF EVERETH BARRERA

Plaintiff Evereth Barrera, by and through his attorneys, brings this action on behalf of himself and all others similarly situated, against Defendant WhiteWave Foods Company ("WFC") and states:

NATURE OF ACTION

1.      WFC manufactures, distributes, markets and sells nationwide five milk products fortified with highly processed fermented algae known as "DHA" under its brand names "Horizon Organic" and "Silk."[1] Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, WFC claims that consuming its premium priced DHA-fortified milk will support brain health in children and adults of all ages.  Front and center and prominently featured by itself in a banner running across the front of each and every milk carton, WFC states "DHA Omega-3 Supports Brain Health."  The brain health representation also prominently appears on the top, the back and the left side panel of every milk carton.

2.      In truth, the DHA-fortified milk products do not support brain health in children or adults.  WFC also does not have competent and reliable scientific evidence to support its brain

_____

[1] These products include: (1) Horizon Organic Whole Milk plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3; (4) Horizon Organic Chocolate Milk plus DHA Omega-3; and (5) Silk DHA Omega-3 & Calcium All Natural Soy Milk (collectively, "DHA-fortified milk" or "the products").

health representation. Clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.  WFC's brain health representation is false, misleading, and reasonably likely to deceive the public.

3.      WFC has employed numerous methods to convey its uniform, deceptive brain health representation to consumers, including print, radio and television advertisements, the Internet, social media websites and, importantly, on the front of the products' packaging and labeling where it cannot be missed by consumers.  The only reason a consumer would purchase the premium-priced DHA-fortified milk products is to obtain the advertised health benefit, which the products do not provide.

4.      As a result of WFC's deceptive brain health representation, consumers – including Plaintiff and members of the proposed Class – have purchased a product that does not perform as advertised.  Moreover, Plaintiff has paid a significant price premium for WFC's DHA-fortified milk products over other comparable products, including WFC's other organic and soy-milk products that do not make the deceptive brain health representation.  For example, on average, a 1/2 gallon of Horizon Organic Milk plus DHA Omega-3 retails between .20 and .50 cents more than WFC's Horizon Organic Milk without the DHA additive.  Similarly, a 1/2 gallon of Silk DHA Omega-3 retails between .20 and .70 cents more than Silk Soy Milk without the DHA additive.

5.      Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased the products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the DHA-fortified milk products.  Based on violations of state unfair competition laws (described below) and breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased the DHA-fortified milk products.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from WFC.

7.      The Court in the Southern District of California, where this case was originally filed, has personal jurisdiction over WFC because WFC is authorized to do business and is conducting business throughout the United States, including in California.  WFC has marketed, promoted, distributed, and sold the DHA-fortified milk products in the United States, including California, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including California, to render the exercise of jurisdiction by this Court permissible.

8.      Venue is proper in the Southern District of California because many of the acts and transactions giving rise to this action occurred in the Southern District of California and WFC is authorized to conduct business in the Southern District of California, has intentionally availed itself of the laws and markets within the Southern District of California through the promotion, marketing, distribution and sale of the DHA-fortified milk products in the Southern District of California and is subject to personal jurisdiction in the Southern District of California.

9.      Pursuant to the February 9, 2012 Transfer Order by the United States Judicial Panel on Multidistrict Litigation (D.E. 31), and pursuant to 28 U.S.C. § 1391 this case has been transferred to this Court.  Plaintiff in this transferred action reserve his rights of remand to the district from which he were transferred at or before the conclusion of the pre-trial proceedings. *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

## PARTIES

10.     Plaintiff Evereth Barrera ("Plaintiff Barrera") is a citizen of Imperial County, California.   Between approximately July and August 2011, Plaintiff Barrera purchased

approximately three 1/2 gallon cartons of Horizon Organic Reduced Fat Milk plus DHA Omega-3 from Von's in El Centro, California.  Prior to purchasing the product, Plaintiff Barrera was exposed to and saw WFC's brain health representation by reading the Horizon Organic Reduced Fat Milk plus DHA Omega-3 label.  Relying on the brain health representation, Plaintiff Barrera purchased Horizon Organic Reduced Fat Milk plus DHA Omega-3, to the exclusion of other milk products, believing the product supported brain health.  He paid between $4.75 and $6.00 for each 1/2 gallon carton.  The Horizon Organic Reduced Fat Milk plus DHA Omega-3 Plaintiff Barrera purchased does not support brain health as represented.  As a result, Plaintiff Barrera suffered injury in fact and lost money.  Had Plaintiff Barrera known the truth about WFC's misrepresentations and omissions, including that there is no scientific evidence to support the brain health representation, he would not have purchased and consumed Horizon Organic Reduced Fat Milk plus DHA Omega-3.

11.     Defendant WFC is a wholly-owned subsidiary of Dean Foods Company.  WFC is organized and existing under the laws of the state of Delaware. WFC's headquarters is at 12002 Airport Way, Broomfield, Colorado 80021. WFC manufactured, advertised, marketed, and sold the DHA-fortified milk to tens of thousands of consumers nationwide, including California. WFC also distributed the false, misleading and deceptively labeled DHA-fortified milk to consumers throughout the United States from its five regional distribution centers located in California, Florida, New Jersey, Utah and Virginia.

## FACTUAL ALLEGATIONS

### The DHA-fortified Products

12.     WFC manufactures, distributes, markets and sells nationwide, including in California, a variety of branded dairy, soy and plant-based beverages.  This lawsuit concerns five of those products: (1) Horizon Organic Whole Milk plus DHA Omega-3; (2) Horizon Organic Reduced Fat Milk plus DHA Omega-3; (3) Horizon Organic Fat-Free Milk plus DHA Omega-3;

(4) Horizon Organic Chocolate Milk plus DHA Omega-3; and (5) Silk DHA Omega-3 & Calcium All Natural Soy Milk.

13.     WFC's DHA-fortified milk products are sold in virtually every major food, drug, and mass retail outlet in the country.  One-half gallon of Horizon Organic Milk plus DHA Omega-3 retails for approximately $5.00 to $6.00.  One-half gallon of Silk DHA Omega-3 Milk retails for approximately $4.00-5.00.  The following are screen shots of the products:

   

14.     Since the products' launch in 2007, WFC has consistently conveyed the message to consumers throughout the United States, including California, that its DHA-fortified milk products "support[] brain health" in children and adults.  They do not.  WFC's brain health representation is false, misleading and deceptive.

15.     All the products WFC manufactures, markets, and sells contain algal DHA.  One common type of DHA is a long-chain Omega-3 fatty acid typically found in cold water fish.  However, the DHA in WFC's milk products is not derived from fish oil.  Instead, the DHA oil found in WFC's milk is an immature short-chain Omega-3 fatty acid made from an extract of mutated and fermented algae.  Contrary to WFC's representations made in its advertising campaign, including on each and every milk carton, DHA algal oil does not support brain health.

- 5 -

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

*WFC's Deceptive Advertising and Marketing of DHA-fortified Milk*

16.     In 2007, WFC began selling the DHA-fortified milk products.  Also in 2007, WFC launched a major advertising campaign to promote the products, conveying a substantially similar message about the health benefits DHA-fortified milk provides.

17.     For example, each and every product package and label repeatedly emphasizes that DHA-fortified milk supports brain health.  Every consumer who purchases the products is exposed to this deceptive brain health representation, which appears prominently and conspicuously on the front and in the center of each carton as follows:

 

18.     The entire backside of the cartons is similarly dedicated to promoting the DHA algal oil in WFC's products and its purported ability to support brain health:

- 6 -




19.   The brain health representation also appears on the top of the Horizon Organic Milk plus DHA Omega-3 cartons:



20.   It appears again on the left-side panel of the Horizon Organic Milk plus DHA Omega-3 cartons, with the added representation that "DHA may make a big difference for kids and adults alike":

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN



21. WFC's websites, http://silksoymilk.com/products/silk-wellness/dha-omega-3-and-calcium and www.horizondairy.com, which are available to the general public, also contain substantially similar deceptive messages about the ability of the products to support brain health. The following screen shots are illustrative:

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN



## Silk® DHA Omega-3 & Calcium

Treat your body to the triple benefit of DHA Omega-3, extra calcium and the goodness of soy—all with the signature smooth flavor you expect from Silk. Delicious over cereal, in recipes or straight-up in a glass.



- 40% of the recommended daily calcium in every glass—that's 30% more calcium than milk[1]—to support strong, healthy bones.
- 32 mg of DHA Omega-3, shown to help build the brain and support heart health.[2]
- 7 grams of nourishing soy protein to help keep you satisfied.

Plus, Silk DHA Omega-3 & Calcium comes with zero cholesterol, absolutely no lactose and a healthy dose of optimism.

+ Nutritional Information

Life's DHA is a registered trademark of Martek biosciences corporation.

[1]Silk DHA Omega-3 & Calcium, 400 mg calcium/serving; 2% milk, 285 mg calcium/serving.

[2]Bourre J.M. Biomed Parmacother. 2007 Feb.-Apr.; 61(2-3): 105-12.





CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

22.     WFC's Horizon Dairy website also attributes the alleged brain health benefit to the inclusion of the DHA Omega-3 additive, which WFC touts as "a valuable nutrient that supports the brain" and a "choice for every member of the family":



23.     Similarly, print advertisements claim that Horizon Organic Milk plus DHA Omega-3 supports "healthy brain development":



CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

24.     Through its labeling and advertising statements concerning the DHA-fortified milk products – including those referenced above – WFC has uniformly conveyed one message: the DHA-fortified milk products "support[] brain health" in children and adults.  They do not.

### *WFC's Brain Health Representation Is Not Supported By Scientific Evidence*

25.     There are no competent and reliable scientific studies that DHA algal oil supplementation supports brain health.  The one and only "reference" identified on the Horizon Organic Milk plus DHA Omega-3 package, Kris-Etherton, PM, et al., Am. J. Clin. Nutr. 2000;71(suppl.):179S-88S, is a review on the consumption practices and sources of Omega-3 fatty acids in U.S. diets.  The review did not address – let alone support – the claim that DHA algal oil supplementation supports brain health.

26.     In an attempt to bolster its false and deceptive message, WFC identifies on its websites five other clinical publications that purportedly substantiate the brain health claim, but fail to do so.[2]

27.     The first citation is to a policy statement from the International Society for the Study of Fatty Acids and Lipids ("ISSFAL") concerning the dietary fat intake of pregnant and lactating women.  *See* ISSFAL Policy Statement 4: Recommendations for intake of polyunsaturated fatty acids by pregnant and lactating women (2009).[3]  Not only did the ISSFAL study look at pregnant and lactating women, not the general population to which WFC markets the products, it also analyzed the importance of fish intake and did not mention plant-based DHA or supplementation.  *Id.* at 1.  To that end, the group recommended that pregnant and lactating women "should aim to achieve dietary intake of n-3 LC-PUFA that supplies a DHA intake of at least 200 mg/day." *Id.* at 3.  That recommendation would require pregnant and lactating women to drink almost an entire carton of milk fortified with fish oil-based DHA every day.

---

[2] Four of the publications are available on the Horizon Organic Milk plus DHA Omega-3 website, from a "facts about DHA" pdf, http://www.horizondairy.com/wpcontent/themes/horizon /pdf/HorizonOrganic_ DHA_FactSheet.pdf (last visited Feb. 16, 2011).  The final publication is listed on the Silk DHA Omega-3 website.
[3] The ISSFAL Policy Statement was originally published as Koletzko B., et al., *Dietary Fat Intakes For Pregnant And Lactating Women,* 98 British J. of Nutrition, 1-5 (2007).

28.     The second citation, Jensen C.L., et al., *Effects Of Early Maternal Docosahexaenoic Acid Intake On Neuropsychological Status And Visual Acuity At Five Years Of Age Of Breast-Fed Term Infants*, 157(6) J. Pediatr. 900-05 (2010) (the "Jensen Study") also fails to support the brain health representation.  The Jensen study did not examine whether DHA enriched milk supports brain health in children or adults, but instead addressed whether there were observational effects "on neurodevelopmental status and visual function in the recipient infant" who received DHA supplementation during breastfeeding.  *Id.* at 125.  On the issue of cognitive development in infants, the study is inconclusive, finding that while "formula-fed infants may benefit from a formula with a DHA content in excess of 0.2% of total fatty acids," "additional studies are required to determine whether this apparent advantage is real, whether this advantage persists, and whether other delayed effects of early DHA availability emerge."  *Id.*

29.     The third citation, McCann, J.C., & Ames, B.N., *Is Docosahexaenoic Acid, An N_3 Long-Chain Polyunsaturated Fatty Acid, Required For Development Of Normal Brain Function? An Overview Of Evidence From Cognitive And Behavioral Tests In Humans And Animals*, 82 Am. J. Clin. Nutr. 281-95 (2005) ("the McCann study"), a review, looked at a limited number of human and animal studies. The human studies were further limited to pregnant and lactating women and infants, not the target population for the products. The review authors expressly emphasized that the trials most capable of providing definitive, competent and reliable evidence – "have yielded mixed results" and overall, "the evidence is insufficient to conclude that LCPUFA supplementation benefited [cognitive] development."  *Id.*

30.     The fourth citation, Dalton, A., et al., *A Randomized Control Trial In Schoolchildren Showed Improvement In Cognitive Function After Consuming A Bread Spread, Containing Fish Flour From A Marine Source*, 80(2-3) Prostaglandins Leukot. Essent. Fatty Acids 143-49 (2009), did not include analysis on supplementation of products like milk with plant-based DHA.  Instead, subject participants received fish-flour spread or a placebo spread for 6 months.  *Id.*

31.     The final review article, also referenced on the Silk DHA Omega-3 Milk carton, Bourre J.M., *Dietary Omega-3 Fatty Acids For Women*, 61(2-3) Biomed Pharmacother. 105-12 (2007), explains why women need Omega-3s, particularly during pregnancy and while breast feeding.  The study finds that Omega-3s may benefit women by preventing development of certain cancers and diseases, but that the "only good sources [of DHA Omega-3s] are fish and seafood, together with 'omega-3' eggs."  *Id.*  The article does not address whether Omega-3 supplementation improves cognitive function and does not reference Omega-3s in milk products.

32.     None of these studies constitute competent and reliable scientific evidence that the DHA-fortified milk products support brain health because, *inter alia*, the studies, preclinical or otherwise, involve pregnant and lactating women or infants not the target population, test irrelevant endpoints, are inconclusive and do not analyze DHA Omega-3 in the quantity or medium delivered by the products.

33.     Indeed, clinical cause and effect studies establish that WFC's brain health representation is false and deceptive.  For example, in Kirby, A., et. al., *A Double-Blind, Placebo-Controlled Study Investigating the Effects of Omega-3 Supplementation in Children Aged 8-10 Years from a Mainstream School Population*, 31(3) Research in Developmental Disabilities 718-30 (2010), the study's authors examined the effects of DHA supplementation on 450 students, aged 8-10 years old for 16 weeks.  *Id.* at 720.  The study's authors found that, despite the wide range of cognitive and behavior outcomes used, DHA supplementation resulted in no significant differences in cognitive results:  "very few significant differences were found between the supplemented and placebo group on the learning and performance measure[s] used."  *Id.* at 729.

34.     Similarly, a 2008 study funded by Martek Biosciences, the manufacturers of the algal DHA in the products, concluded that there was no statistically significant difference between the DHA and placebo group in cognitive function. *See* Ryan, A., et al., *Assessing the Effect of Docosahexaenoic Acid on Cognitive Functions in Healthy Preschool Children*, 47(4)

Clin. Pediatr. 355-62 (2008) (the Ryan Study);[4] *see also* Eilander, A., et al., *Effects of n-3 Long Chain Polyunsaturated Fatty Acid Supplementation On Visual And Cognitive Development Throughout Childhood: A Review Of Human Studies*, 76(4) J. Prostaglandins, Leukotrienes and Essential Fatty Acids 189-203 (Apr. 2007) ("Evidence for benefits of n-3 LCPUFA on cognitive development in healthy children older than 2 years of age is too limited to allow a clear conclusion.").

35.     Based on the lack of confirming scientific evidence, the Federal Trade Commission ("FTC") recently examined WFC's brain health representations as part of its ongoing monitoring program.  In light of the FTC's investigation, WFC modified its radio, television, print and online advertisements.  WFC has not changed the product labels and packaging, which every purchaser, including the Plaintiff, is necessarily exposed to at the point of sale.

36.     WFC did not and does not have competent and reliable scientific evidence that the DHA algal oil in its milk products supports brain health.  In fact, competent and reliable scientific studies have found no cause and effect relationship between intake of milk supplemented with DHA algal oil and cognitive development. WFC's brain health representation is false and misleading and reasonably likely to deceive the average consumer.

### The Impact of WFC's Wrongful Conduct

37.     Despite inadequate, inapplicable and inconclusive testing, WFC continues to unequivocally and falsely claim that its products "support[] brain health" for children and adults alike.

38.     As the manufacturer and distributor of the DHA-fortified milk products, WFC possesses specialized knowledge regarding the content and effects of the ingredients contained in

---

[4] This study examined 175 four-year old children who received either 400 mg/d of DHA or a placebo in capsules for 4 months.

its products and is in a superior position to learn of the effects – and has learned of the effects – its products have on consumers.

39.     Specifically, WFC knew or should have known, but failed to disclose that it had no competent and reliable scientific evidence that its DHA-fortified milk products support brain health and that well conducted, clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

40.     Nonetheless, WFC conveyed and continues to convey one uniform false message: DHA-fortified milk supports brain health in children and adults of all ages.

41.     Plaintiff and Class members have been and will continue to be deceived or misled by WFC's false and deceptive brain health representation.  Plaintiff purchased and consumed the products during the relevant time period and in doing so, read and considered the product labels, and based his decision to buy the products on the false brain health representation.  WFC's false and misleading brain health representation and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the products.  Plaintiff would not have purchased the products had he known that WFC's claims were false and misleading, that WFC did not possess competent and reliable scientific evidence to support its brain health representation, and that clinical cause-and-effect studies have found no causative link between DHA algal oil supplementation and brain health.

42.     As a result, Plaintiff and the Class members have been damaged in their purchases of these products and have been deceived into purchasing products that they believed, based on WFC's false representations, supported brain health, when, in fact, they do not.

43.     Based upon the false and misleading brain health benefit conveyed in its marketing and advertising, WFC is able to price its DHA-fortified milk products at a premium over other milk products, organic or otherwise, without the additive.  In fact, a 1/2 gallon of Horizon Organic Milk plus DHA Omega-3 retails between .20 and .50 cents more than WFC's

Horizon Organic Milk without the DHA additive, while a 1/2 gallon of Silk DHA Omega-3 retails between .20 and .70 cents more than Silk Soy Milk without the DHA additive.

### CLASS DEFINITION AND ALLEGATIONS

44.     As detailed below in the individual counts, Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

45.     Plaintiff seeks to represent the following classes:[5]

(1)     Unfair Competition Law ("UCL") Multi-State Class
         All consumers from California Alaska, Arkansas, Connecticut, Delaware, Florida, Hawaii, Idaho, Kansas, Nebraska, New Jersey, New Mexico, New York, Rhode Island, South Carolina, Texas, Tennessee, Vermont, and Washington who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

         Or in the alternative:

         Unfair Competition Law ("UCL") California-only Class
         All California consumers who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

(2)     Consumers Legal Remedies Act ("CLRA") Multi-State Class
         All consumers from California and Pennsylvania who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

         Or in the alternative:

         Consumers Legal Remedies Act ("CLRA") California-only Class
         All California consumers who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

(3)     Breach of Express Warranty California-only Class
         All California consumers who, within the applicable statute of limitations period, purchased the DHA-fortified milk products.

---

[5] Plaintiff reserves the right to amend or alter the following Classes pending discovery in this case.

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

46. Excluded from the above classes are WFC and its officers, directors and employees and those who purchased the DHA-fortified milk products for resale.

47. *Numerosity*. The classes are comprised of tens of thousands of consumers throughout the United States, including California and the other states for which Plaintiff seeks class certification. The classes are so numerous that joinder of all members of the classes is impracticable. The precise number of class members is unknown to Plaintiff.

48. ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b) whether WFC had adequate substantiation for its brain health representation prior to disseminating those claims to the consuming public;

(c) whether consumers paid a premium for the DHA-fortified milk products;

(d) whether WFC's alleged conduct violates public policy;

(e) whether the alleged conduct constitutes violations of the laws asserted;

(f) whether WFC engaged in false or misleading advertising;

(g) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(h) whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

49. *Typicality*. Plaintiff's claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to WFC's deceptive brain health statements, including the deceptive brain health representation that accompanied each and every carton of DHA-fortified

milk.   Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Classes.

50.     *Adequacy of Representation*.   Plaintiff will fairly and adequately protect the interests of the members of the Classes.   Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the classes.

51.     *Superiority*.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually.   The trial and the litigation of Plaintiff's claims are manageable.

52.     WFC has acted and refused to act on grounds generally applicable to the classes by engaging in a uniform marketing and advertising campaign containing false, misleading and deceptive representations and material omissions that misled Plaintiff and the Class, thereby making appropriate final injunctive relief with respect to the classes as a whole.

**COUNT I**
**For Violations of California Business & Professions Code §17200,** *et seq.*
**(On behalf of Plaintiff and Members of the Multi-State or California-Only Class)**

53.     Plaintiff Barrera realleges and incorporates by reference the allegations contained in paragraphs 1 - 52 above as if fully set forth herein.

54.     As alleged herein, Plaintiff Barrera has suffered injury in fact and lost money or property as a result of WFC's conduct because he purchased the product in reliance on WFC's brain health representation detailed above, but did not receive a product that supports brain health.

55.     The Unfair Competition Law, Business & Professions Code § 17200, *et seq*. ("UCL") and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, WFC committed unlawful business practices by, *inter alia*, making the representations

(which also constitute advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code, §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

56.     Plaintiff Barrera and the UCL subclass reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

57.     WFC's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, WFC engaged in false advertising, misrepresented and omitted material facts regarding its DHA-fortified milk products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

58.     As stated in this Complaint, Plaintiff Barrera and the UCL subclass allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers.  WFC's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq*.

59.     There were reasonably available alternatives to further WFC's legitimate business interests, other than the conduct described herein.

60.     Business & Professions Code § 17200, *et seq*., also prohibits any "fraudulent business act or practice."

61.     WFC's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

62.     Plaintiff Barrera and other members of the UCL subclass have in fact been deceived as a result of their reliance on WFC's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff Barrera and other members of the UCL subclass who each purchased WFC's DHA-fortified milk products. Plaintiff Barrera and the other UCL subclass members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

63.     As a result of its deception, WFC have been able to reap unjust revenue and profit.

64.     Unless restrained and enjoined, WFC will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

65.     Plaintiff Barrera and the UCL subclass seek restitution and an injunction prohibiting WFC from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

66.     Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff Barrera and the UCL subclass make claims for attorneys' fees and costs

## COUNT II
### Violations of the California Consumers Legal Remedies Act – Civil Code §1750 *et seq.*
### (On behalf of Plaintiff and Members of the Multi-State or California-Only Class)

67.     Plaintiff Barrera repeats and realleges each allegation contained in paragraphs 1 – 52 above as if fully set forth herein.

68.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act" or "CLRA") and similar laws in other states. Plaintiff Barrera is a consumer as defined by California Civil Code § 1761(d).  WFC's DHA-fortified milk products are "goods" within the meaning of the Act.

69.     WFC violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Barrera and

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

the CLRA subclass which were intended to result in, and did result in, the sale of the DHA-fortified milk products:

> (5)  Representing that [the DHA-fortified milk products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

*          *          *

> (7)  Representing that [the DHA-fortified milk products are] of a particular standard, quality or grade . . . if [they are] of another.

*          *          *

> (9)  Advertising goods . . . with intent not to sell them as advertised.

*          *          *

> (16)  Representing that [the DHA-fortified milk products have] been supplied in accordance with a previous representation when [they have] not.

70.  WFC violated the Act by representing and failing to disclose material facts on the product labels and associated advertising, as described above, when it knew, or should have known, that the representations were unsubstantiated, false and misleading and that the omissions were of material facts they were obligated to disclose.

71.  Pursuant to California Civil Code § 1782(d), Plaintiff Barrera and CLRA subclass seek a Court order enjoining the above-described wrongful acts and practices of WFC and for restitution and disgorgement.

72.  Pursuant to section 1782 of the Act, by letter dated September 27, 2011, Plaintiff Barrera notified WFC in writing by certified mail of the particular violations of section 1770 of the Act and demanded that WFC rectify the problems associated with the actions detailed above and give notice to all affected consumers of WFC'S intent to so act.  WFC failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the

Act.  Therefore, Plaintiff Barrera and the CLRA subclass further seek claims for actual, punitive and statutory damages, as deemed appropriate.

73. Pursuant to California Civil Code section 1780(e), Plaintiff Barrera and the CLRA subclass make claims for damages, attorneys' fees and costs.

**COUNT III**
**Breach of Express Warranty**
**(On behalf of Plaintiff and Members of the California-Only Class)**

74. Plaintiff Barrera repeats and realleges each every allegation contained in paragraphs 1 – 52 above as if fully set forth herein.

75. Plaintiff Barrera brings this claim individually and on behalf of the Class.

76. WFC expressly warranted on each and every carton of its DHA-fortified milk that it "supports brain health" in children and adults alike. The brain health statement made by WFC is an affirmation of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  Plaintiff placed importance on WFC's brain health representation.

77. All conditions precedent to WFC's liability under this contract have been performed by Plaintiff and the Class.

78. WFC breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product that would support brain health as represented.

79. As a result of WFC's breach of their contract, Plaintiff and the Class have been damaged in the amount of the price of the products they purchased.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A. Certifying the classes as requested herein;

B. Awarding Plaintiff and the proposed Class members damages;

C. Awarding restitution and disgorgement of WFC's revenues to Plaintiff and the proposed Class members;

D.     Awarding injunctive relief as permitted by law or equity, including enjoining WFC from continuing the unlawful practices as set forth herein, and directing WFC to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.     Awarding statutory damages, as appropriate;

F.     Ordering WFC to engage in a corrective advertising campaign;

G.     Awarding attorneys' fees and costs; and

H.     Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 30, 2012

Respectfully submitted,

s/ Lance A. Harke
Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel, P.A.
sengel@harkeclasby.com
Howard M. Bushman, P.A.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:     (305) 536-8220
Facsimile:     (305) 536-8229

*Interim Co-Lead Class Counsel and Liaison Counsel for Plaintiffs*

Frank E. Piscitelli, Jr., Esq.
frank@feplaw.com
**PISCITELLI LAW FIRM**
6151 Wilson Mills Road, Suite 110
Highland Heights, OH 44143

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

Elaine A. Ryan, Esq.
eryan@bffb.com
Lindsey Gomez-Gray, Esq.
Lgomez-gray@bffb.com
Patricia N. Syverson, Esq.
psyverson@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012

*Interim Co-Lead Class Counsel
For Plaintiff*

Ben Barnow
b.barnow@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600,
Chicago, Illinois 60602

Todd D. Carpenter
tcarpenter@bffb.com
**BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, California 92101

Sean T. Keith
sean@arkattorneys.com
**KEITH, MILLER, BUTLER,
SCHNEIDER & PAWLIK, PLLC**
224 South 2nd St.
Rogers, Arkansas 72756

Stewart Weltman, of counsel
sweltman@futtermanhoward.com
**LEVIN FISHBEIN SEDRAN &
BERMAN**
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603

Howard Sedran
hsedran@lfsblaw.com
**LEVIN, FISHBEIN, SEDRAN &
BERMAN**
510 Walnut Street
Philadelphia, Pennsylvania 19106

J. Andrew Meyer
ameyer@forthepeople.com
Tamra Givens
tgivens@forthepeople.com
Rachel Soffin

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

rsoffin@forthepeople.com
**MORGAN & MORGAN, PA**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

Scott W. Weinstein
Sweinstein@forthepeople.com
**MORGAN & MORGAN, PA**
12800 University Drive, Suite 600
Fort Myers, Florida

Joseph Siprut
jsiprut@siprut.com
**SIPRUT PC**
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603

*Additional Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

s/ Lance A. Harke

- 25 -

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

## SERVICE LIST

| | |
|---|---|
| J. Andrew Meyer<br>ameyer@forthepeople.com<br>Rachel Soffin<br>rsoffin@forthepeople.com<br>Tamra Carsten Givens<br>tgivens@forthepeople.com<br>Morgan and Morgan, P.A.<br>201 North Franklin Street<br>7th Floor<br>Tampa, FL 33602<br>Telephone: 813-223-5505<br>Telecopier: 813-223-5402<br><br>*Served Via CM/ECF Transmission* | Scott William Weinstein<br>sweinstein@forthepeople.com<br>Morgan & Morgan PA<br>PO Box 9504<br>Fort Myers, FL 33906-9504<br>Telephone: 239-433-6880<br>Telecopier: 239-433-6836<br><br>*Served Via CM/ECF Transmission* |
| Sean T. Keith<br>skeith@arkattorneys.com<br>Keith, Miller, Butler, Schmeider & Pawlik, PLLC<br>224 South 2nd Street<br>Rogers, AR 72756<br>Telephone: 479-621-0006<br>Telecopier: 479-631-6890<br><br>*Served Via CM/ECF Transmission* | Charles C. Sweedler<br>csweedler@lfsblaw.com<br>Howard J. Sedran<br>hsedran@lfsblaw.com<br>Levin Fishbein Sedran & Berman<br>510 Wanut Street<br>Suite 500<br>Philadelphia, PA 19106<br>Telephone: 215-592-1500<br>Telecopier: 215-592-2663<br><br>*Served Via CM/ECF Transmission* |
| Stewart Weltman<br>sweltman@futtermanhoward.com<br>Dana Marie Pesha<br>dpesha@futtermanhoward.com<br>Futterman Howard Ashley Watkins & Weltman, P.C.<br>122 South Michigan Avenue<br>Suite 1850<br>Chicago, IL 60603<br>Telephone: 312-427-3600<br><br>*Served Via CM/ECF Transmission* | Joseph Siprut<br>jsiprut@siprut.com<br>Siprut, PC<br>122 S Michigan Avenue<br>Chicago, IL 60603<br>Telephone: 312-588-1440<br><br>*Served Via CM/ECF Transmission* |

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

| | |
|---|---|
| Andrew Dylan Campbell<br>acampbell@novackandmacey.com<br>Novack and Macey, LLP<br>100 North Riverside Plaza<br>Chicago, IL 60606<br>Telephone: 312-419-6900<br><br>*Served Via CM/ECF Transmission* | Randall J. Sunshine<br>rsunshine@linerlaw.com<br>Angela C. Agrusa<br>aagrusa@linerlaw.com<br>Liner, Grode, Stein, Yankelevitz,<br>Sunshine, et al.<br>1100 Glendon Avenue<br>14th Floor<br>Los Angeles, CA 90024<br>Telephone: 310-500-3500<br><br>*Served Via CM/ECF Transmission* |
| Mitchell L. Marinello<br>mmarinello@novackmacey.com<br>Novack and Macey LLP<br>Suite 1500<br>303 West Madison Street<br>Chicago, IL 60606<br>Telephone: 312-419-6900<br><br>*Served Via CM/ECF Transmission* | Elaine A. Ryan<br>eryan@bffb.com<br>Patricia Nicole Syverson<br>psyverson@bffb.com<br>Lindsey Gomez-Gray<br>Lgomez-gray@bffb.com<br>Bonnett Fairbourn Friedman & Balint PC<br>2901 N Central Avenue<br>Suite 1000<br>Phoenix, AZ 85012<br>Telephone: 602-274-1100<br><br>*Served Via CM/ECF Transmission* |
| Manfred Patrick Muecke, Jr.<br>mmuecke@bffb.com<br>Bonnett Fairbourn Friedman and Balint, PC<br>600 West Broadway<br>Suite 900<br>San Diego, CA 92101<br>Telephone: 619-756-7748<br>Telecopier:  602-274-1199<br><br>*Served Via CM/ECF Transmission* | David Storrs Wood<br>david.wood@akerman.com<br>Akerman Senterfitt<br>420 South Orange Avenue - Suite 1200<br>Orlando, FL 32801<br>Telephone: 407-419-8548<br>Telecopier:  407-254-4207<br><br>*Served Via CM/ECF Transmission* |

CASE NO.: 1:12-MD-02324-LENARD/O'SULLIVAN

| | |
|---|---|
| Lawrence Dean Silverman<br>lawrence.silverman@akerman.com<br>Sandra Jessica Millor<br>sandra.millor@akerman.com<br>Akerman Senterfitt<br>1 Southeast Third Avenue<br>25th Floor<br>Miami, FL 33131<br>Telephone: 305-374-5600<br>Telecopier:  305-374-5095<br><br>*Served Via CM/ECF Transmission* | Margaret Diane Mathews<br>margaret.mathews@akerman.com<br>Akerman Senterfitt<br>401 E. Jackson Street<br>Suite 1700<br>Tampa, FL 33602-5803<br>Telephone: 813-223-2837<br><br>*Served Via CM/ECF Transmission* |
| Frank E. Piscitelli, Jr.<br>frank@feplaw.com<br>Piscitelli Law Firm<br>6151 Wilson Mills Road<br>Suite 110<br>Highland Heights, OH 44143<br>Telephone: 216-931-7000<br><br>*Served Via CM/ECF Transmission* | |